# EXHIBIT A

E-FILED
THURSTON COUNTY, WA
SUPERIOR COURT
04/01/2020 8:58:20 AM
Linda Myhre Enlow
Thurston County Clerk

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF THURSTON**

| | |
|---|---|
| ISELA M. MALDONADO, individually and on behalf of all others similarly situated, | ) No.   20-2-01372-34 |
| | ) |
| | ) ORIGINAL COMPLAINT |
| Plaintiffs, | ) |
| vs | ) |
| | ) |
| COLUMBIA VALLEY EMERGENCY PHYSICIANS, LLC; EMCARE, INC., EMCARE HOLDINGS, INC., ENVISION HEALTHCARE HOLDINGS, INC., AND ENVISION HEALTHCARE CORPORATION | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

**ORIGINAL COMPLAINT**

Plaintiff Isela M. Maldonado ("Plaintiff"), individually, and on behalf of all others similarly situated, the Class, files this Original Complaint against Defendants Columbia Valley Emergency Physicians, LLC, EmCare, Inc., EmCare Holdings, Inc., Envision Healthcare

ORIGINAL COMPLAINT - 1

Holdings, Inc., and Envision Healthcare Corporation (collectively "Defendants"), and hereby alleges as follows:

# I

# OVERVIEW

1.1     Health care in the United States has a self-inflicted bad reputation.  The cost of care is the worst among all 1st world countries.  Cost is out of control.  Profiteers rule, not the doctors or those who toil at the bedside of the sick and dying.  They too are victims alongside the patients they treat.  Giant corporations rule.  They are held at bay only by other giant corporations.  The marketplace is normalized by negotiations between the giants.  But the atrocity occurs when the giants want more.  They are not satisfied charging usual and customary costs.  They want many, many times more.  How do they get more?  They gouge.  They can't gouge when other giants sit at the negotiation table.  They can't gouge Medicare, Medicaid, or major private insurers.  Instead, they gouge you and me.  They collect the usual and customary costs from their giant equals, then gouge the patient with the balance.

1.2     Bills from such profiteers have a real effect on real people – the patients.  These real people are mothers, fathers, and children.  The patient doesn't see an unreasonable bill coming, cannot prevent it and is surprised to learn about it.  All of a sudden, when the medical event passes, and they thought they were covered, BAM!  The next event is sometimes as life changing as the medical event.  They are gouged.  They are billed hundreds of percentage points higher than the usual and customary costs—by the profiteers.  This lawsuit is against such profiteers.

1.3     The most conservative estimates, including those from the Center for Disease Control, Harvard University, and U.S. Bankruptcy Courts, tell the story:

- 56 million Americans under age 65 will have trouble paying medical bills;

- Over 35 million American adults (ages 19-64) will be contacted by collections agencies for unpaid medical bills;

- Nearly 17 million American adults (ages 19-64) will receive a lower credit rating on account of their high medical bills;

- Over 15 million American adults (ages 19-64) will use up all their savings to pay medical bills;

- Over 11 million American adults (ages 19-64) will take on credit card debt to pay off their hospital bills;

- Nearly 10 million American adults (ages 19-64) will be unable to pay for basic necessities like rent, food, and heat due to their medical bills;

- Over 16 million children live in households struggling with medical bills;

- Despite having year-round insurance coverage, 10 million insured Americans (ages 19-64) will face bills they are unable to pay;

- 1.7 million Americans live in households that will declare bankruptcy due to their inability to pay their medical bills;

- Three in five bankruptcies annually (approximately 643,000 bankruptcies) are due to medical bills.  The vast majority of these bankruptcies occur despite health insurance, and with the Affordable Care Act in serious jeopardy if not already overturned, these numbers will not likely change.

1.4     Undebatable in the analysis of high medical bills is this: it is always wrong to overcharge for services.  This is particularly so when such services are medical services provided at the most vulnerable times of our lives – when we are ill or in need of emergent care.  That is when we expect medical care that is not only good, but also expect medical care that is billed at usual and customary rates – reasonable rates.  Just because a patient has surprise (unexpected) doctors or other healthcare professionals caring for them does not mean that billing such a patient for excessive amounts is somehow justified.  The exact opposite is true: usual and customary billing practices are expected regardless of the circumstances that initiate care of a patient, and regardless of who cares for the patient.  To bill a patient otherwise is simply gouging.

1.5     Yet such behavior – presenting after the fact excessive medical bills to patients – is exactly what Defendants have and continue to do.  And their business plan makes sure of that. They set up a business structure to get away with gouging.  Despite the very real effects that are seen from the medical bills described above.  And despite objective evidence of what constitutes usual and customary fees.  Defendants ignore objective marketplace data and fee structure analysis from private and public academic institutions, major insurance carriers, state governments, and the federal government.  Defendants know what they should charge but have instead charged patients far more (in just one example, rates 600% (six times) the government-set usual and customary rate was demanded by Defendants).  Data from at least one major insurance company indicates that Defendants charge on average 975% above Medicare for their services.

1.6     The effect of Defendants' egregious billing practices is significant as ER visits continue to be one of the largest drivers of our country's spending on outpatient care and one of the biggest sources of financial surprises for consumers nationwide. In fact, from 2012 to 2016 there was a 34% increase in per-person spending for ER services in the United States.

1.7     Thus, together, Defendants, by both their business practices and by their business entity structure, price gouge and continue to do so by billing Plaintiff and the Class unreasonable and excessive fees for medical services.  Plaintiffs and the Class seek remedies for such unlawful and illegal practice.

## II

## PARTIES

2.1     Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

2.2     Plaintiff Isela M. Maldonado, individually, and as class representative, is a resident of the state of Washington.   Plaintiff was subjected to wrongful excessive and unreasonable medical billing – gouging – by Defendants at all times material to this Complaint.

2.3     Defendant Columbia Valley Emergency Physicians, LLC is a Washington Limited Liability Company with its principal place of business located at 7700 W Sunrise, Blvd, Plantation, Florida, 33322-4113. Defendant Columbia Valley Emergency Physicians, LLC can be served with process through its registered agent, Corporation Service Company, 300 Deschutes Way SW, STE 208 MC-CSC1, Tumwater, Washington, 98501.

2.4     Defendant Columbia Valley Emergency Physicians, LLC supplies medical services and providers, including emergency department physicians, to Washington hospitals and healthcare entities.

2.5     Defendant Columbia Valley Emergency Physicians, LLC is an affiliate, subsidiary, or is otherwise related to, subservient to, or controlled by Defendants EmCare, Inc., EmCare Holdings, Inc., Envision Healthcare Holdings, Inc. and Envision Healthcare Corporation.

2.6     Defendant Columbia Valley Emergency Physicians, LLC assigns and/or otherwise transfers billing and revenue rights for medical services provided by Columbia Valley Emergency Physicians, LLC to Defendants EmCare, Inc., EmCare Holdings, Inc., Envision Healthcare Holdings, Inc. and Envision Healthcare Corporation who then bill and/or receive all or portions of such revenue streams.

2.7     Defendant EmCare, Inc. (hereinafter "EmCare") is a Foreign For-Profit Corporation with its principal place of business located at 7700 W Sunrise, Blvd, Plantation,

1   Florida, 33322-4113.  EmCare can be served with process through its registered agent, Corporation

2   Service Company, 300 Deschutes Way SW, STE 208 MC-CSC1, Tumwater, Washington, 98501.

3           2.8     EmCare does business in Washington as well as 38 other states.  EmCare provides,

4   among other things, outsourced facility-based physician and healthcare personnel staffing services

5   in multiple areas of medicine including emergency medicine, hospital medicine (e.g.

6   "hospitalists"), acute care surgery, anesthesiology, and radiology/teleradiology.  EmCare provides

7   these services via wholly subservient and controlled regional and local business entities, like

8   Columbia Valley Emergency Physicians, LLC – shell entities.

9           2.9     Defendant EmCare Holdings, Inc., (hereafter "ECHI") is a foreign corporation.

10  Upon information and belief, ECHI is the parent and alter ego of Defendant EmCare.  ECHI

11  provides outsourced facility-based physician services. It offers services in the areas of emergency

12  medicine, hospital medicine, acute care surgery, anesthesiology, and radiology/teleradiology. The

13  company also provides physician services, including practice leadership, physician/clinician

14  recruiting and retention, clinician credentialing, clinician scheduling, clinical education programs,

15  and billing and reimbursement services, as well as consultation on a myriad of topics addressing

16  clinical, administrative, management, performance improvement, and patient experience issues. It

17  serves hospitals, health systems, rural hospitals, ambulatory care centers, physicians, and other

18  healthcare clients in Washington and many other states.

19          2.10    Defendant Envision Healthcare Holdings, Inc. (hereafter "EHHI") is a foreign

20  corporation.  EHHI can be served with process through its registered agent Corporation Service

21  Company 1900 W. Littleton Boulevard, Littleton, CO, 80120.

22          2.11    Upon information and belief, EHHI is the parent company of and alter ego of

23  Defendants EmCare and ECHI.  EHHI provides physician-led outsourced medical services to

24

consumers, hospitals, healthcare systems, health plans, and government entities in the United States. It offers a range of hospital-based physician staffing and related management services, including contract management, staffing, recruiting, scheduling, operational improvement assessment, practice support, and practice improvement services for emergency departments, anesthesiology, hospitalist/inpatient care, radiology, tele-radiology, and surgery programs; and physician-led care management solutions to patients outside the hospital. The company also provides community based medical transportation services, such as emergency response services; non-emergency medical transportation services, such as critical care transfers, and wheelchair and other inter-facility transport services; and other services comprising managed transportation, dispatch, event medical, paramedic training, fixed-wing air ambulance, and onsite and offshore emergency medical services. It markets its services primarily under the EmCare and AMR brands.

2.12    Defendant Envision Healthcare Corporation (also known as Envision Healthcare, Inc. and at times hereafter referred to as "EHC") is a foreign corporation.  EHC can be served with process through its registered agent Corporation Service Company 1900 W. Littleton Boulevard, Littleton, CO, 80120.

2.13    Upon information and belief, EHC is the parent company of and alter ego of Defendants EmCare, ECHI, and EHHI.  EHC provides physician-led outsourced medical services to consumers, hospitals, healthcare systems, health plans, and government entities in the United States. It offers a range of hospital-based physician staffing and related management services, including contract management, staffing, recruiting, scheduling, operational improvement assessment, practice support, and practice improvement services for emergency departments, anesthesiology, hospitalist/inpatient care, radiology, tele-radiology, and surgery programs; and physician-led care management solutions to patients outside the hospital. The company also

provides community based medical transportation services, such as emergency response services; non-emergency medical transportation services, such as critical care transfers, and wheelchair and other inter-facility transport services; and other services comprising managed transportation, dispatch, event medical, paramedic training, fixed-wing air ambulance, and onsite and offshore emergency medical services. It markets its services primarily under the EmCare and AMR brands.

2.14    Upon information and belief, Defendants Envision Healthcare Corporation and Envision Healthcare Holdings, Inc., through several wholly-owned intermediate subsidiaries, own all of the stock of EmCare Holdings, Inc., and in turn EmCare Holdings, Inc. owns all of the stock in EmCare, Inc., and in turn EmCare, Inc. owns all of the stock of a myriad of local and regional downstream companies that continue to the local-hospital level.

2.15    Upon information and belief, Envision Healthcare Corporation and Envision Healthcare Holdings, Inc., and their subordinate companies, ECHI, and EmCare have a commonality of officers and directors, and are thus alter egos of one another.

2.16    Moreover, EmCare, ECHI, EHHI, and EHC not only share officers and directors, but they also share office space.

2.17    EmCare, ECHI, EHC, and EHHI are engaged in the same business as described in the paragraphs above.  For example, EmCare is engaged in the same business as its parents ECHI and EHHI, and ECHI is engaged in the same business as EHHI and EHC.

2.18    EmCare, ECHI, EHC, and EHHI have not observed the corporate formalities required for keeping themselves separate insofar as their actions, inactions, and liability is concerned – in fact, the distinctions between these Defendants was and remains blurred to the extent that it is clear that EmCare is merely an instrument of its corporate parents, ECHI, EHC, and EHHI, and that all four entities are merely one common instrument of business.

**III**

**JURISDICTION & VENUE**

3.1     Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

3.2     Personal jurisdiction over Defendants in this matter arises because they have purposefully availed themselves of this forum through their business activities in Washington.

3.3     This Court has jurisdiction over the parties and claims in this case and this Court is a proper venue for this case because Defendant Columbia Valley Emergency Physicians, LLC can be served through its statutory registered agent in Tumwater, Washington and EmCare, Inc. can also be served through the same statutory registered agent in Tumwater, Washington.

3.4     Since Defendants Columbia Valley Emergency Physicians, LLC and EmCare, Inc. both maintain statutory registered agents capable of receiving service of process in Thurston County, Washington, Thurston County is deemed their residence in the state of Washington pursuant to RCW 4.12.025. Plaintiff is also a resident of the state of Washington. Accordingly, there is incomplete diversity of Defendants from Plaintiff, and thus this Court and not Federal Court has proper jurisdiction over this matter.

3.5     This Court is a proper venue pursuant to RCW 4.12.025 because Defendants Columbia Valley Emergency Physicians, LLC and EmCare, Inc. both maintain the same statutory registered agent in Thurston County, Washington who is capable of receiving service of process on behalf of both Defendants.

**IV**

**SUMMARY OF CASE**

4.1     Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

4.2     This class action concerns a systematic and planned scheme by Defendants to take advantage of those in need of medical care, those who are most vulnerable.  Together, Defendants structured their business enterprises and formed "outsource provider" relationships with hospitals and other medical facilities in order to gouge those in need by foisting unreasonable and excessive fees on such patients. As Defendants' scheme often involved and involves healthcare providers that medical patients cannot pick and choose prospectively, and often involved and involves healthcare providers in emergency (critical life and death) situations, such medical patients had no choice in who cared for them.  And because not only do such patients lack the bargaining power of health insurance companies, big businesses, and the government, but also such ill and critically ill patients are in no position whatsoever to bargain even if they could, Defendants took advantage of this "no choice" situation.

4.3     Bills for services, particularly surprise bills, are always wrong when such bills are gouging – unreasonable and excessive – and therefore not usual and customary.

4.4     This is a consumer class action lawsuit involving such gouging of medical costs.  It is brought by Plaintiff, individually and on behalf of other similarly situated persons (i.e. class members), who were billed for, and/or paid monies based upon, objectively unreasonable and excessive rates above the usual and customary fees for similar medical services.

4.5     Plaintiff and Class members were billed excessive fees after the fact, in a surprise fashion, by Defendants.  In other words, Plaintiff and Class members were presented with bills for excessive fees through no fault of their own.

4.6     Unlike sophisticated and powerful corporate, business and government entities, Plaintiffs and Class members lack meaningful negotiating power regarding such excessive fees.

4.7     Plaintiff and Class members are required to pay amounts determined by Defendants. The amount billed, charged, and/or paid to Defendants is objectively unreasonable and at excessive rates above the usual and customary fees for similar medical services given Plaintiffs and Class members limited negotiating power.

4.8     As a result of Defendants' failure to utilize reasonable fee structures when billing Plaintiff and Class members, Plaintiff alleges price gouging and seeks actual and punitive damages, as well as a permanent injunction to prevent Defendants from further damaging Plaintiff and all putative Class members, as further set forth herein.

**V**

**<u>FACTS COMMON TO ALL COUNTS</u>**

5.1     Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

5.2     Plaintiff and Class allegedly received medical services from Defendants.

5.3     Plaintiff and Class were billed by Defendants for such medical services.

5.4     The amounts billed by Defendants were unreasonable and excessive; in other words, the amounts billed exceeded the usual and customary fees for such services.

5.5     Plaintiff and the Class was presented with such unreasonable, excessive and gouging fees only after the fact – the definition of "surprise" billing.

5.6     Plaintiff and the Class had no way and no power to pre-negotiate reasonable and thus lower fees.

ORIGINAL COMPLAINT - 11

5.7     Defendants have ignored objective market data from a variety of sources including private and academic institutions, major insurance companies, state governments, and the Federal government, when failing to conform such bills to usual and customary fees.

5.8     Defendants have in fact intentionally constructed a business structure to maximize wrongful, unreasonable, and excessive fees.

5.9     Plaintiff and Class members were harmed as a result of Defendants' conduct by unjust monies paid to Defendants, damage to Plaintiff's and the Class' credit rating and financial balance/net worth (Defendants' claim(s) were financial liabilities regardless of whether or not Plaintiff and the Class paid), or both.

## VI

## __INDIVIDUAL FACTS__

6.1     Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

6.2     Plaintiff Isela M. Maldonado was a patient at Trios Southridge Hospital on and during January 15, 2019.

6.3     As part of her care at Trios Southridge Hospital, Plaintiff allegedly received medical care by outsourced healthcare providers who were employees, contractors, representatives, agents, apparent agents, ostensible agents or who were otherwise related to Defendants.

6.4     Plaintiff was billed $821.00 by Defendants for such medical services on January 15, 2019.

6.5     The amounts billed by Defendants were unreasonable and excessive; the fees exceeded the usual and customary fees for such services.

6.6    Plaintiff was billed unreasonable and excessive fees that exceeded the usual and customary fees for such serves on other occasions as well.

6.7    Plaintiff was presented with such unreasonable, excessive and gouging fees only after the fact – the definition of "surprise" billing.

6.8    Plaintiff had no way and no power to pre-negotiate lower and reasonable fees.

6.9    Defendants have taken no corrective measures to conform such bills to usual and customary fees.

6.10    Plaintiff was harmed as a result of Defendants conduct by unjust monies paid to Defendants, damage to Plaintiff's credit rating and financial balance/net worth (Defendants' claim(s) were financial liabilities regardless of whether or not Plaintiff paid), or both.

**VII**

**<u>CLASS ALLEGATIONS</u>**

7.1    Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

7.2    Plaintiff brings this action pursuant to the common law claims asserted herein, including but not limited to negligence, breach of implied contract, price gouging, balanced billing, surprise billing, procedural and substantive unconscionability, and other similar claims and causes of action,  on behalf of herself and all those similarly situated (the Class).

7.3    **The Class**: Plaintiff brings this action on behalf of herself and a Class of similarly situated individuals, defined as follows:

> All individuals who were sent medical bills by Defendants (including but not limited to Defendants and any of Defendants' affiliates, subsidiaries, parents, successors, predecessors, employees, contractors, agents, representatives, or assigns) within the past 6 years for amounts that exceed the highest in-network amount paid by major private health insurance plans for such services.

7.4     Because Defendants' actions are ongoing, there is no closing date for this proposed Class.

7.5     Excluded from the Class is (1) any judge presiding over this action and family members of such a judge; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and the current or former employees, officers, and directors of same; (3) persons who properly execute and file a timely request for exclusion from the Class; and (4) the legal representatives, successors, or assigns of any such excluded persons, as well as any individual who contributed to the presentation to Plaintiff or the Class of the fees billed by Defendants.

7.6     **Numerosity**: Members of the Class are so numerous that their individual joinder herein is impracticable.  Although the exact number of Class members and their addresses are unknown to Plaintiff, they and the amount of their damages are readily ascertainable on a ministerial basis from Defendants' records.  Upon information and belief, including publications from Defendants, there are at least 15 million patient encounters with Defendants annually, and thus the total Class numbers are well in the millions.  Class members may be notified of the pendency of this action by mail and/or electronic mail, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

7.7     **Typicality**: Plaintiff's claims are typical of the Class because Plaintiff and the Class sustained the same type of injury as a result of Defendants' uniform wrongful conduct of unreasonable and excessive billing during transactions with Plaintiff and the Class.  There is nothing extraordinary or unusual about Plaintiff being excessively billed – unreasonable and excessive billing is the common nucleus – the modus operandi – of Defendants for all who receive or are alleged to receive medical services by Defendants.  The defenses to such a modus operandi

1    are also the same as to every member of the Class: Defendants can <u>only</u> defend by showing that

2    such bills were indeed reasonable.

3         7.8    **Adequacy**: Plaintiff is an adequate representative of the Class because her interests

4    are the same as – they do no conflict with – the interests of the members of the Class she seeks to

5    represent.  Plaintiff represents the very kind of person that is abused and injured by Defendants'

6    unreasonable billing scheme.  Plaintiff has retained counsel competent and experienced in class

7    action litigation, and Plaintiff intends to prosecute this case vigorously.  The interests of members

8    of the Class will be treated fairly and will be adequately protected by Plaintiff and her counsel.

9         7.9    **Predominance, Superiority and Manageability**: This class action is appropriate

10   for certification because class proceedings are superior to all other available methods for the fair

11   and efficient adjudication of this controversy, and joinder of all members of the Class is

12   impracticable.  The damages suffered by the individual members of the Class will likely be small

13   relative to the burden and expense of individual prosecution of the complex litigation necessitated

14   by Defendants' wrongful conduct and Defendants' complicated business scheme created as part

15   of that wrongful conduct.  Thus, it would be virtually impossible for the individual members of

16   the Class to obtain effective relief from Defendants' misconduct.  Even if members of the Class

17   could sustain such individual litigation, it would not be preferable to a class action because

18   individual litigation would increase the delay and expense to all parties due to the complex legal

19   and factual controversies presented in this Complaint.  By contrast, a class action presents far fewer

20   management difficulties and provides the benefits of a single adjudication, economy of scale, and

21   comprehensive supervision by a single court.  Economies of time, effort, and expense will be

22   fostered, and uniformity of decisions will be ensured.

23

24

7.10 **Commonality**: Common questions of law and fact exist as to Plaintiff and all members of the Class and predominate over any questions affecting only individual Class members, and include, but are not limited to:

      a. Whether Defendants actually provided the medical services that were billed;

      b. Whether the billed amounts exceeded the usual and customary cost of similar services;

      c. Whether the billed amounts exceeded the maximum amount paid by major health insurance carriers for the same or similar medical services at in network rates;

      d. Whether Defendants billed for medical services at unreasonable and excessive rates;

      e. Whether Defendants created and/or participated in a complicated alter-ego business structure to bill for medical services at unreasonable and excessive rates;

      f. Whether Defendants were intentional in billing for medical services at unreasonable and excessive rates;

      g. Whether Defendants took reasonable steps and measures to ensure that bills for medical services were not unreasonable and/or excessive;

      h. Whether Defendants notified Plaintiff and Class members that the billed rates for medical services were unreasonable and/or excessive; and

      i. Whether and to what extent Plaintiff and the Class have sustained damages.

7.11 Plaintiff reserves the right to revise Class definitions and questions based upon facts learned in discovery.

## VIII

## CAUSES OF ACTION

**A.**    **Count 1 – Negligence.**

8.1     Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

8.2     Defendants had a duty to provide the actual medical services that were billed.

8.3     Defendants also had a duty to exercise reasonable care in order to bill Plaintiff and the Class only for reasonable, usual and customary fees for medical services actually provided. Defendants' duty arose from the alleged medical care rendered to Plaintiff and the Class.

8.4     Defendants also had a duty to have procedures in place to ascertain reasonable, usual and customary fees for medical services.

8.5     The resulting injury to Plaintiff and the Class as a result of Defendants' billing unreasonable, excessive and gouging fees was reasonably foreseeable, particularly in light of Defendants' intentional actions to create a complicated business entity structure to undertake such unreasonable and excessive billing practices.

8.6     Defendants, through their actions and/or omissions, unlawfully breached their duties to Plaintiff by failing to exercise reasonable care in billing Plaintiff and the Class reasonable and customary amounts for medical services.

8.7     But for Defendants' breach of their duties, Plaintiff and the Class would not be injured by receiving unreasonable and excessive bills for medical services.

8.8     Defendants failure to exercise reasonable care, and thus breach of their duties, was the proximate cause of the monetary and other injuries sustained by Plaintiff and the Class.

8.9     Defendants intended, knew, were substantially aware, should have known, acted in callous and reckless disregard, and/or were consciously indifferent to the obvious yet extreme harm that Plaintiff and the Class would suffer if Defendants billed for excessive and unreasonable

fees for medical services.  As a result, Plaintiff and the Class have been further harmed and/or injured.

**B.      Count 2 – Breach of Implied Contract.**

8.10    Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

8.11    Plaintiff and the Class sought medical services in general; Plaintiff specifically did not choose her medical provider by name and specifically did not choose any Defendants.

8.12    Defendants provided medical services to Plaintiff and the Class.

8.13    Defendants did not obtain a written contract to perform such services.

8.14    Defendants did not obtain an oral contract to perform such services.

8.15    The actions and conduct of Plaintiff, the Class and Defendants created an implied contract.

8.16    Plaintiff and the Class, and Defendants, had a mutual understanding that medical services would be provided for a usual and customary fee.

8.17    No actual fee ("price") was discussed with Plaintiff and the Class, no documents discussing actual fees were proffered to Plaintiff and the Class, and no reference was made to Plaintiff and the Class regarding obtaining a fee schedule (or "prices") prior to or during Defendants' provision of medical services.

8.18    Fundamental contract law requires insertion of a usual and customary fee or "price" for such medical services as there was no actual fee or "price" schedule or reference in the implied contract.

8.19    Plaintiff and the Class were justified in understanding that a reasonable and customary fee would be charged by Defendants.

8.20    Defendants' fees far exceeded the usual and customary fees charged for the same or similar medical services and were thus unreasonable.

8.21    Defendants claimed exorbitant and unreasonable fees were owed for services rendered to Plaintiff and the Class.

8.22    Defendants' exorbitant and unreasonable fees and resulting claim(s) based on such fees were a breach of implied contract which damaged Plaintiff and the Class either by unjust monies paid to Defendants, damage to Plaintiff's and the Class' credit rating and financial balance/net worth (Defendants' claim(s) were financial liabilities regardless of whether or not Plaintiff and the Class paid), or both.

8.23    Defendants' exorbitant and unreasonable fees and resulting claim(s) based on such fees claim(s) breached the implied covenant of good faith and fair dealing which damaged Plaintiff and the Class either by unjust monies paid to Defendants, damage to Plaintiff's and the Class' credit rating and financial balance/net worth (Defendants' claim(s) were financial liabilities regardless of whether or not Plaintiff and the Class paid), or both.

**C.    Count 3 – Common Law Procedural Unconscionability.**

8.24    Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

8.25    Defendants' business practices described above are procedurally unconscionable. Defendants conduct their business by way of contracts of adhesion and engage in business practices intentionally designed to price gouge by billing Plaintiff and the Class unreasonable and excessive fees for medical services.

**D.    Count 4 – Common Law Substantive Unconscionability.**

8.26    Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

8.27    Defendants' business practices described above are substantively unconscionable. By both their business practices and by their business entity structure, Defendants price gouge by billing Plaintiff and the Class unreasonable and excessive fees for medical services.

8.28    Defendants have willfully engaged in this conduct.

**IX**

**RELIEF REQUESTED**

9.1    Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

9.2    WHEREFORE, Plaintiff and the Class demands judgment against Defendants concurrently, for compensatory and punitive damages, the sum to be determined by a jury, which will fairly and adequately compensate Plaintiff and the Class for the above described damages and injuries.  Plaintiff and the Class also demand additional, exemplary, and or punitive damages. Plaintiff and the Class also seek interest from the date of the incident, and the costs and fees of the proceeding, including but not limited to attorney's fees.

9.3    More specifically, based upon the above allegations, Plaintiff and the Class respectfully asks the Court to:

    a.    Certify this case as a class action on behalf of the Class as defined above, and appoint named Plaintiff as class representatives and undersigned as lead counsel;

b.      Find that Defendants are liable under all legal claims asserted herein for their negligent and negligence-related but intentional/willful/wanton behavior (Count 1) in billing for unreasonable, excessive, and gouging amounts;

c.      Award permanent injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an order prohibiting Defendants or any of their current or future subsidiaries, parents, successors, predecessors, employees, contractors, agents, representatives, or assigns from marking up medical costs above usual and customary amounts;

d.      Award damages and punitive damages to Plaintiff and the Class in an amount to be determined at trial;

e.      Award restitution for certain damages to Plaintiff and the Class, including but not limited to payment of any other costs, including attorney's fees, incurred in clearing credit history or credit rating, and also including any costs, including attorney's fees, in connection with any civil or administrative proceeding to satisfy any debt, lien, or other obligation arising as a result of Defendants' wrongful and unlawful actions;

f.      Award Plaintiff and the Class costs as well as their reasonable litigation expenses and attorney's fees;

g.      Award Plaintiff and the Class pre- and post-judgment interest to the maximum extent allowable by law; and

h.      Award Plaintiff and the Class such other and further legal or equitable relief as equity and justice may require.

Dated this 1st day of April 2020.

ORIGINAL COMPLAINT - 21

1
2
3
4
    **McPartland Law Offices, PLLC**

    **McGEHEE ★ CHANG, LANDGRAF, FEILER**

By:_____

By:_____

Bryce P. McPartland, WSBA 37418
1426 S. Pioneer Way
Moses Lake, Washington 98837
p. 509.495.1247
f. 509.651.9430

Jack E. McGehee
H. C. Chang
Benjamin T. Landgraf
Benjamin C. Feiler
10370 Richmond Ave., Suite 1300
Houston, TX 77042
Phone: (713) 864-4000
Fax:   (713) 868-9393
Pro Hac Vice pending