UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ISELA M MALDONADO,<br><br>  Plaintiff,<br>v.<br><br>COLUMBIA VALLEY EMERGENCY PHYSICIANS LLC,<br><br>  Defendants. | Case No. C20-5428 BHS-TLF<br><br>REPORT AND RECOMMENDATION ON MOTION TO DISMISS OR, IN THE ALTERNATIVE, STRIKE PLAINTIFF'S CLASS ALLEGATIONS<br><br>**Noted for: August 28, 2020** |

Plaintiff filed a complaint in state court alleging four causes of action against defendants: (1) negligence; (2) breach of implied contract; (3) common law procedural unconscionability; (4) common law substantive unconscionability. Dkt. 1-1 at 17-21. The defendants removed this case to federal court. Dkt. 1-4.

This matter comes before the Court on the defendants' Motion to Dismiss or, in the Alternative, Strike Plaintiff's Class Allegations (Dkt. 26). This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). Having considered the motion, plaintiff's Response (Dkt. 31), and defendants' Reply (Dkt. 35), the undersigned recommends that defendants' motion be granted in part and denied in part. Plaintiff's claims of negligence, procedural unconscionability, and substantive unconscionability should be dismissed. Plaintiff should be permitted to pursue her claim

REPORT AND RECOMMENDATION ON MOTION TO
DISMISS OR, IN THE ALTERNATIVE, STRIKE
PLAINTIFF'S CLASS ALLEGATIONS - 1

1  for breach of contract. The Motion to Strike should be denied and the matter should
2  proceed to the class certification phase.

## I. BACKGROUND

According to the complaint, Defendant Columbia Valley Emergency Physicians, LLC ("CVEP") supplies medical services and providers, including emergency department physicians, to Washington hospitals and healthcare entities, a practice that permits hospitals and clinics to "outsource" medical services to providers working with other companies. Defendant CVEP transfers the billings and revenue rights for their medical services to defendant EmCare, Inc., EmCare Holdings, Inc., Envision Healthcare Holdings, Inc. and Envision Healthcare Corporation (collectively, "Envision defendants"). Dkt. 1-1, Original Complaint, at 8.

EmCare, Inc., is owned by parent company EmCare Holdings, Inc., which is owned by Envision Healthcare Holdings, Inc., which in turn is owned by Envision Healthcare Corporation. *Id.* at 9. The Envision defendants are all engaged in the business of supplying physician-led outsourced medical services. Alleging a commonality of officers and directors and shared office space between the Envision defendants, plaintiff asserts that the Envision defendants are alter egos of each other in bringing this suit and contesting the practices of their "outsource provider" relationships with hospitals. *Id.*

The complaint alleges that in January 15, 2019, plaintiff Isela Maldonado was admitted for treatment at Trios Southridge Hospital and received care from outsourced healthcare providers working in connection with CVEP and the Envision defendants. Dkt. 1-1, at 13. Plaintiff alleges that due to emergency, she could not communicate her

1  assent or preferences for treatment. *Id.* at 12. Following the administration of medical services, defendants presented Maldonado with a bill of $821.00. Plaintiff alleges that this rate is unreasonable and excessive for the services provided, and that she was unable to negotiate the bill to a lower price. *Id.* at 14.

Plaintiff alleges that defendants regularly overbill patients by presenting non-negotiable prices after the administration of emergency medical services, a practice known in Washington as "surprise billing" or "balance billing." Dkt. 1-1, Original Complaint, at 14. Plaintiff professes that these injuries are suitable for resolution in class action and seeks to represent the class of all who were overbilled in the last six years. *Id.* at 13. Plaintiff seeks damages, and equitable relief. *Id.* at 20-21.

## II.   STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), the court may dismiss a claim based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Khoja v. Orexigen Therapeutics Inc.,* 899 F.3d 988, 1008 (9th Cir. 2018). When considering a motion to dismiss under Rule 12(b)(6), the court construes the claim in the light most favorable to the nonmoving party. A motion to dismiss can be granted only if the complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007). The complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly,* 550 U.S. at 556, 570).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). "Specific facts are not necessary; the

1  statement need only give the defendant fair notice of what the . . . claim is and the
2  grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal
3  citations omitted). However, the pleading must be more than an "unadorned, the-
4  defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Although the
5  Court must accept all the allegations contained in a complaint as true, the Court is not
6  required to accept a "legal conclusion couched as a factual allegation." *Id.* "Threadbare
7  recitals of the elements of a cause of action, supported by mere conclusory statements,
8  do not suffice." *Id.*

### III.   DISCUSSION

A. <u>Rule 8 Specificity</u>

Defendants argue that plaintiff fails to meet the standard of Rule 8, asserting that she bundles the alleged conduct of the "outsourced health care provider" (i.e., CVEP) with all the other named defendants to hold them all liable, without individualized allegations against each. Dkt. 26, at 3. Defendants argue that the complaint fails to establish the scope of the alleged misconduct as to each defendant. *Id.* Rule 8 requires that the complaint make clear to each defendant the nature of the claims against them. Fed. R. Civ. P. 8.

A complaint must succinctly state the elements of the claim, giving fair notice of the claim, and the grounds upon which it rests. *Yamaguchi v. United States Department of Air Force,* 109 F.3d 1475, 1481 (9th Cir. 1997). And the complaint must allege facts about acts or omissions that defendants engaged in, and how those facts support plaintiff's claim. *Jones v. Community Redev. Agency,* 733 F.2d 646, 649 (9th Cir. 1984).

1   A challenge under FRCP 8 is different from, though it may be related to, a challenge
2   under FRCP 12(b)(6). *McHenry v. Renne,* 84 F.3d 1172, 1179-80 (9th Cir. 1996).
3       In this case, the complaint alleges that all the Envision defendants are alter egos
4   of each other and that defendant CVEP – which is wholly owned by the Envision
5   defendants – transfers the billing and revenue rights for their medical services (that is,
6   control of the business practice at issue) to the Envision defendants. Dkt. 1-1, at 8.
7   Plaintiff alleges that the Envision defendants "have not observed the corporate
8   formalities required for keeping themselves separate insofar as their actions, inactions,
9   and liability is concerned, [and the] four entities are merely one common instrument of
10  business." *Id.* Plaintiff effectively alleges that the defendants are bundled together with
11  respect to the practice of surprise billing contested in this suit.
12      These allegations meet the Rule 8 notice pleading standard, with respect to the
13  single claim for which plaintiff has sufficiently alleged a cause of action – breach of
14  implied contract. Plaintiff alleges she went in for treatment at CVEP; she received
15  treatment from outsourced medical professionals who worked with the defendants; and
16  she did not negotiate a price. Dkt. 1-1, at 19. The complaint alleges the defendants later
17  billed plaintiff $821, which shows they expected payment. *Id.* Plaintiff alleges that no
18  price was discussed and no fee schedule was included in any discussions between
19  plaintiff and defendants before she received the bill. *Id.* In the absence of a fixed price
20  term to establish an explicit contract, plaintiff asserts in her complaint that a reasonable
21  fee should be paid for those medical services. *Id.*

22
23
24
25

B. Negligence

Plaintiff claims that in overbilling her, the defendants were negligent in their duty to assess and charge patients fair and reasonable prices for services received. Dkt. 1-1, at 18. Plaintiff asserts that this duty arises out of the professional duty to provide the actual medical services received. *Id.* Plaintiff alleges that the receipt of an unreasonable bill has damaged her credit rating and financial balance or net worth by introducing unjust financial liabilities. Dkt. 1-1, at 20.

In Washington, a plaintiff seeking to recover on a common law claim of negligence must show: (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury. *Wuthrich v. King County*, 185 Wn.2d 19, 25 (2016) (citations omitted). Defendants argue that Washington law does not recognize any duty to charge reasonable prices, and even if there were such a duty, plaintiff has not alleged facts to show that the $821.00 charged was, in fact, unreasonable. Dkt. 26, at 6.

Plaintiff argues that the duty of care in billing arises from the duty to provide emergency medical care, based on "logic, common sense, justice, policy and precedent." Dkt. 31, at 12-13 (citing *Keodalah v. Allstate Ins. Co.*, 194 Wn.2d 339, 358, 449 P.3d 1040, 1051 (2019) (the Washington standard for imposing a duty)).

Plaintiff supports the claim that this duty exists at common law by referring to the Balance Billing Protection Act ("BBPA"), a since-passed Washington statute (in effect as of January 1, 2020). Dkt. 31, at 13 (citing RCW 48.49). The BBPA "ban[s] balance billing of consumers enrolled in fully insured, regulated insurance plans and plans offered to public employees …for [emergency medical care]… [and provides] self-

1  funded group health plans with an option to elect to be subject to [its] provisions." RCW
2  48.49.003(2)(a). Further, it requires that medical providers and carriers negotiate their
3  prices in good faith, removing consumers from the "contractual disputes." RCW
4  48.49.003(2)(b).

5  This duty of good faith in negotiation that has recently been enacted into law by
6  the Washington State Legislature fails to retroactively create a common law duty of fair
7  pricing, and the text of the statute indicates why no such common law duty of
8  reasonable pricing existed prior. According to RCW 48.49.003(2)(b), the practice of
9  balance billing speaks to "contractual disputes," which entail economic damages and do
10 not raise any independent duties sounding in tort.

11 While economic losses arising out of contract are not always limited to contract
12 remedies, Washington follows the independent duty rule: recovery in tort must be
13 supported by a duty arising independently of the terms of the contract. *Eastwood v.*
14 *Horse Harbor Found., Inc.*, 170 Wn.2d 380, 388-389 (2009). Plaintiff argues that a duty
15 to set reasonable prices for emergency arises out of the duty to provide actual medical
16 services in exchange for payment. Yet this second duty sounds in contract and is
17 distinct from the duty of physicians to provide emergency care for unexpected patients.
18 The Court can find no precedent, and plaintiff has supplied none, to indicate that
19 Washington law recognizes an independent tort duty of fair billing for emergency
20 services, or in other contexts. *See generally, Physician Anesthesia Ass'n v. Molina*
21 *Healthcare of Wash., Inc.*, 2012 Wash. App. LEXIS 1398 (App. Div. 1 June 11, 2010)
22 (discussing concerns over balance billing between providers and insurers entirely as a
23 matter of contract).

1  On this basis, plaintiff's negligence claim fails as a matter of law, for lack of any
2  duty recognized under Washington common law in tort.

3     C. <u>Breach of Implied Contract</u>

4  Plaintiff's claim for breach of implied contract must be evaluated according to
5  whether the contract is implied in law or implied in fact. Plaintiff's complaint does not
6  specify the class of implied contract allegedly breached. The complaint alleges that the
7  parties had mutual understanding that payment would be given for medical services,
8  and that defendants were paid "unjust monies." Dkt. 1-1, at 13. The Washington
9  Supreme Court has standardized the terms "unjust enrichment" and "quantum meruit" to
10 denote distinct remedies, founded in discrete theories of contracts implied either in law
11 or in fact. *Young v. Young*, 164 Wn.2d 477, 483 (2008) (addressing prior synonymous
12 use in case law by clarifying the distinction) (citing *Chandler v. Wash. Toll Bridge Auth.*,
13 17 Wn.2d 591, 600 (1943)).

14 A contract implied in law, or quasi contract, arises where no true contractual
15 relationship exists, but notions of fairness and justice determine that one party has
16 unjustly retained money or benefits from another. The elements of this equitable
17 obligation are "(1) the defendant receives a benefit, (2) the received benefit is at the
18 plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain
19 the benefit without payment." *Young*, 164 Wn.2d at 483-84 (2008). Unjust enrichment is
20 remedied by the repayment of the value of the benefit so retained.

21 By contrast, the elements of a contract implied in fact are (1) the defendant
22 requests work, (2) the plaintiff expects payment for the work, and (3) the defendant
23 knows or should know the plaintiff expects payment for the work. This is remedied by

1  recovery of quantum meruit, or the reasonable value of the services provided under an
2  actual contract implied in fact. *Young*, 164 Wn.2d at 485 (2008).

3        Defendants argue that plaintiff has failed to allege what provision of any
4  contractual agreement was breached. Dkt. 26, at 8. Yet reviewing the alleged facts of
5  plaintiff's admission for medical treatment, the court finds there are sufficient facts to
6  state the elements of a contract implied in fact, or a contract implied in law, albeit with
7  the parties in reversed positions. *See Hailey v. MedCorp, Inc.*, 2006-Ohio-4804 * (Ct.
8  App. Ohio, 6th App. 2006). Plaintiff sought treatment at CVEP, where she received
9  treatment from outsourced medical professions working with the defendants without
10 negotiating a price. Dkt. 1-1, at 19. The defendants received the benefit of having a
11 patient for whom they can provide services for a fee, and the plaintiff received the
12 benefit of having her medical condition treated. The defendants later billed plaintiff
13 $821, indicating their expectation of payment (and, viewing the facts through the lens of
14 a contract implied in law, the parties dispute whether this amount of money would cause
15 or represent an unjust enrichment of the defendants). *Id.* Plaintiff alleges that the parties
16 neither discussed a price nor referred to a fee schedule prior to her receipt of the bill. *Id.*
17 Plaintiff asserts that because there was no agreed-upon fixed price term to establish an
18 explicit contract, a reasonable fee should be paid for those medical services. *Id.*

19       Defendants argue that plaintiff has failed to allege what provision of any
20 contractual agreement was breached. Dkt. 26, at 8. To the contrary, the complaint
21 plainly disputes the price of the medical services rendered and seeks to substitute a
22 "reasonable and customary fee" for the defendants' bill of $821. Dkt. 1-1, at 19. The
23 Court should find that plaintiff has sufficiently stated her claim to the remedy of quantum

meruit—that is, the reasonable value of the services rendered to plaintiff is the measure of the dollar value of the agreement that defendants entered into when they provided services. This is the dollar value defendants would be entitled to expect under this implied contract, and they may not exact a price from plaintiff beyond that reasonable value without breaching the implied contract. *See Young*, 164 Wn.2d at 485 (2008). Plaintiff has alleged sufficient facts to state a claim for enforcement of that implied provision of the contract between the parties.

Additionally, the plaintiff states a plausible claim for breach of a contract implied in law. Under circumstances such as these in which the parties dispute the value of the services and monetary damages, the calculation of this equitable obligation may be functionally identical to the price levied under a contract implied in fact – a reasonable fee. *See* WPI 1301A.02 (jury instructions to award damages for breach of quasi contract according to the "reasonable value of the [services performed]").

Defendants point to the brevity of plaintiff's alleged facts and assert that plaintiff has not alleged the existence of a contract, because she does not specify which services she received, the amount billed to her insurance, or the amounts paid either by her or her insurance. Dkt. 26, at 10. Defendants further argue that plaintiff has not provided sufficient factual support for her allegations that a charge of $821, or charges in excess of the prices customarily charged to major private health insurance plans, are "exorbitant and unreasonable" or are not "usual and customary." *Id.*  An implied contract may be asserted even if no formal contract is alleged. *See* WPI 1301A.02, Comment ("A quasi contract is also called a contract implied in law. It is not, however, based on a contract at all. Instead it 'arises from an implied duty of the parties,' not based on

consent or agreement but on equitable principles calling for the prevention of unjust enrichment.'" (citations omitted)).

Yet these factual determinations, necessary as they may be in further proceedings, are external to the analysis of whether, taken in the light most favorable to the non-moving party, plaintiff has alleged facts that would plausibly support a claim as to the elements of an implied contract, whether in law or in fact.

To support her claim of unreasonableness in price, plaintiff alleges that the defendants' practice is to charge private individuals more than the government or private insurance rates. To sufficiently plead the existence of an implied contract, plaintiff does not need to provide the specific facts of her medical condition, the precise rate for the treatment she received charged to others, or whether she has paid the bill. The Court should find that the complaint alleges the existence of an implied contract in fact, or an implied contract in law, which is sufficient to provide notice to defendants of the claims brought against them. *See Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted).

### D. Procedural Unconscionability

Plaintiff alleges defendants' balance billing practice is unconscionable. Dkt. 1-1, at 20. Plaintiff asserts that the implied contract is a contract of adhesion with an unreasonably high price term. *Id.* To support this, plaintiff alleges that she did not choose which medical provider treated her or choose defendants specifically, and that she lacked "meaningful negotiating power" to contest the price asserted by defendants. *Id.* at 19, 12. Defendants argue that these factual allegations do not indicate a contract

1 of adhesion, so plaintiff has failed to state a claim for procedural unconscionability. Dkt
2 26, at 12.

3 In Washington, a contract may be procedurally or substantively unconscionable, and either may invalidate a contract. *McKee v. AT&T Corp.*, 164 Wn.2d 372, 396 (2008). Procedural unconscionability arises from the "lack of a meaningful choice, considering all the circumstances surrounding [the formation of the contract]." *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 345 (2004) (citing *Nelson v. McGoldrick*, 123 Wn.2d 124, 131 (1995). To evaluate whether a meaningful choice existed, courts may consider (1) the manner in which the contract was entered, (2) whether each party had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print. *Riley v. Iron Gate Self Storage*, 198 Wn. App. 692, 710 (2017).

A contract may also be procedurally unconscionable when the parties have unequal bargaining power and one party lacks a meaningful opportunity to bargain, forming a contract of adhesion. *Romney v. Franciscan Med. Grp.*, 186 Wn. App 728, 736 (Ct. App. Div. I 2015) (citing *Adler*, 153 Wn.2d at 348). Whether a contract is an adhesion contract depends on "(1) whether the contract is a standard form printed contract, (2) whether it was prepared by one party and submitted to the other on a take it or leave it basis, and (3) whether there was no true equality of bargaining power between the parties." *Adler*, 153 Wn.2d at 347 (internal quotation marks omitted) (quoting *Yakima Cty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 393, (1993)). Whether a contract is an adhesion contract is relevant but not determinative to the question of procedural unconscionability, for the key inquiry is

1 whether a party lacked meaningful choice. *Zuver v. Airtouch Commc'ns, Inc.*, 153
2 Wn.2d 293, 302 (2004); *Adler*, 153 Wn.2d at 348.
3       There is no written contract in this case, making the first factor immaterial.
4 Plaintiff alleges facts that would support a claim of implied contract with defendants
5 based on the defendants' rendering of medical services with expectation of payment:
6 according to the facts alleged, defendants issued a "bill" and not a contract for plaintiff to
7 accept or reject. *See* Dkt. 1-1, at 12. Plaintiff has not alleged facts indicating the
8 existence of any other contract.
9       As discussed above, the implied contract at issue has a price established by
10 quantum meruit to the value of the services provided. Plaintiff alleges that defendants
11 submitted their price to plaintiff on a "take it or leave it" basis, but this circumstance
12 alone would not classify the contract as an adhesion contract. Plaintiff alleges that when
13 she received medical services from the defendants, she "lacked [] bargaining power"
14 and no negotiation of price occurred. Without further facts, plaintiff has failed to allege
15 that either party exerted greater bargaining over the other during the formation of the
16 contract. *See* Dkt. 1-1, at 11. Whether plaintiff could negotiate the price with defendants
17 after receiving the bill, or whether the defendants chose a price consistent with the
18 contract, is not relevant to whether the contract was an adhesion contract.
19       The inquiry into procedural unconscionability continues into whether plaintiff
20 lacked a meaningful choice at the time of the transaction. Plaintiff points out that as a
21 patient seeking emergency treatment, she had no choice of which entity or professional
22 would be her medical provider and as a practical matter, she could not have specifically
23 chosen to receive services from the defendants. But, as defendants point out, in
24
25

1  emergency care situations, the medical providers also lack choice regarding persons
2  they should treat. A plaintiff patient's choice of provider, in the context of emergency
3  treatment, is not related to whether the plaintiff (impliedly) assents to treatment or a
4  medical provider assents to provide treatment. Therefore, plaintiff has not been denied
5  meaningful choice; plaintiff has failed to state a claim for procedural unconscionability.

E.  Substantive Unconscionability

Plaintiff argues that the price she was billed is substantively unconscionable, because the $821.00 charge was "unreasonable and excessive." Dkt. 1-1, at 21.

Substantive unconscionability exists when a provision in the contract is one-sided, overly harsh or excessively favors one party. *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 344 (2004). A provision is substantively unconscionable if it is "'[s]hocking to the conscience, monstrously harsh, and exceedingly calloused.'" *Id.* at 344-45 (internal quotation marks omitted) (quoting *Nelson*, 127 Wn.2d at 131).

Defendants argue that it is inconsistent for plaintiff to argue that the contract price is so high as to be substantively unconscionable, while at the same time claiming that the parties mutually understood the medical services would be provided for a reasonable fee. Dkt. 26, at 13. Because plaintiff has not alleged, as an alternative theory of the case, the existence of any contract – other than an implied contract -- it follows that the payment term alleged in the complaint is for "usual and customary fees" and not for any unfair contractual provisions. *See* Dkt. 1-1 at 12. Plaintiff's allegation that she was billed for medical services in excess of that rate would relate to the performance of the implied contract, as discussed above.

F. Class Action Claims

Finally, defendants move to strike plaintiff's class allegations on the grounds that plaintiff's claims are not common to all recipients of defendants' medical services and billing and that plaintiff's class definition exceeds the applicable statute of limitations. Dkt. 26, at 14. Plaintiff's class definition includes individuals sent medical bills in the past six years, while there is a three-year statute of limitations for actions on implied contracts. Dkt. 1-1, at 13; *see Peiffer v. Pro-Cut Concrete Cutting & Breaking Inc.*, 6 Wn. App. 2d 803, 816, 431 P.3d 1018 (2018), *review denied*, 193 Wn.2d 1006 (2019) (citing RCW 4.16.080(3)).

Although some courts allow class allegations to be set aside at the pleadings stage, most courts decline to strike class allegations prior to class certification motions and discovery. *See Thornell v. Seattle Serv. Bureau*, No. 14-1601, 2015 U.S. Dist. LEXIS 27930, 2015 WL 999915, at 6* (W.D. Wash. Mar. 6, 2015) (citing *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009); *Cruz v. Sky Chefs, Inc.*, No. 12-02705, 2013 U.S. Dist. LEXIS 65114, 2013 WL 1892337, *6 (N.D. Cal. May 6, 2013) (compiling cases). Defendants' Motion to Strike should accordingly be denied at this time and the matter deferred until the issue of class certification is litigated.

Alternatively, since plaintiff has agreed to limit her claims to the applicable statute of limitations, plaintiff's complaint may be dismissed, with leave to amend the proposed class definition. Dkt. 31 at 23.

- 15

CONCLUSION

For the reasons given above, the undersigned recommends that defendants' motion to dismiss be granted in part and denied in part and that defendants' motion to strike be denied.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **August 28, 2020**, as noted in the caption.

Dated this 12th day of August, 2020.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge