1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

THE HONORABLE DAVID G. ESTUDILLO

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ISELA M. MALDONADO, Individually and
on behalf of all others similarly situated,

                    Plaintiffs,

      v.

COLUMBIA VALLEY EMERGENCY
PHYSICIANS, LLC; EMCARE, INC.;
EMCARE HOLDINGS INC.; ENVISION
HEALTHCARE HOLDINGS, INC.; and
ENVISION HEALTHCARE
CORPORATION,

                   Defendants.

No. 3:20-cv-05428-DGE

**DEFENDANTS' MOTION TO DENY
CLASS CERTIFICATION AND
STRIKE PLAINTIFF'S CLASS
ALLEGATIONS**

NOTE ON MOTION CALENDAR:
January 14, 2022

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE)

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

1

# TABLE OF CONTENTS

2

I.      PRELIMINARY STATEMENT ..................................................... 1

3

II.     PROCEDURAL HISTORY............................................................ 1

4

III.    FACTUAL BACKGROUND.......................................................... 2

5

IV.     THE PUTATIVE CLASS............................................................... 4

6

V.      ARGUMENT ................................................................................ 5

7

        A.      Plaintiff's Class Allegations Must Be Struck Because Plaintiff Has Failed
8               to File a Motion in Support of Class Certification.................................. 5

9

        B.      The Putative Class Is Not Certifiable................................................. 6

10              1.      The Putative Class Lacks Commonality and Individual Questions
                        Predominate Over Common Questions. ..................................... 7

11

                2.      The Putative Class Lacks Typicality......................................... 17
12

        C.      Plaintiff's Putative Class Includes Class Members Whose Claims Are
13              Time-Barred. .......................................................................... 21

14      D.      Plaintiff Does Not Have Standing to Assert Breach of Implied Contract
                Claims Against Unnamed Physician Practices That Did Not Provide
15              Services to Plaintiff................................................................... 21

16

VI.     CONCLUSION............................................................................ 22

17

18

19

20

21

22

23

24

25

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

# TABLE OF AUTHORITIES

## Cases

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997).................................................................................8

*Armijo v. Affilion, LLC*,
   No. CV 19-750 KG/GJF, 2020 WL 2797685 (D.N.M. May 29, 2020), aff'd,
   854 Fed. Appx. 236 (10th Cir. Mar. 23, 2021) ................................... 19, 20

*Beaty v. Ford Motor Co.*,
   No. C17-5201 TSZ, 2021 WL 3109661, at *9 (W.D. Wash. July 22, 2021) ............................7

*Beltran-Serrano v. City of Tacoma*,
   10 Wn. App. 2d 1002 (Aug. 20, 2019) .................................17

*Bess v. Ocwen Loan Servicing LLC*,
   334 F.R.D. 432 (W.D. Wash. 2020) .................................6, 7

*Bowden v. Med. Ctr., Inc.*,
   309 Ga. 188 (Ga. 2020).................................11

*Campagnolo S.R.L. v. Full Speed Ahead, Inc.*,
   C08-1372 RSM, 2010 WL 2079694, at *5 (W.D. Wash. May 20, 2010),
   *aff'd*, 447 Fed. Appx. 814 (9th Cir. 2011).................................22

*Colomar v. Mercy Hospital, Inc.*,
   242 F.R.D. 671 (S.D. Fla. 2007).................................10

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013).................................6

*Converse v. Vizio, Inc.*,
   C17-5897 BHS, 2020 WL 729804, at *5 (W.D. Wash. Feb. 13, 2020),
   reconsideration denied, C17-5897 BHS, 2020 WL 2922490 (W.D. Wash.
   June 3, 2020).................................12

*Day v. Sarasota Doctors Hosp., Inc.*,
   No. 8:19-CV-1522-T-33TGW, 2020 WL 4539145 (M.D. Fla. July 23, 2020) ................ 10, 18

*DiCarlo v. St. Mary Hosp.*,
   530 F.3d 255 (3d Cir. 2008).................................10, 12

*Duncan v. Alameda Cty. Fire Dep't*,
   C-08-5486 MMC, 2010 WL 703099 at *1 (N.D. Cal. Feb. 25, 2010) .................................5

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - ii

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

*Easter v. Am. W. Fin.*,
    381 F.3d 948 (9th Cir. 2004) ........................................................................ 22

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ........................................................................ 17

*Eufaula Hosp. Corp. v. Lawrence*,
    32 So. 3d 30 (Ala. 2009) ........................................................................ 11, 12

*Fosmire v. Progressive Max Ins. Co.*,
    277 F.R.D. 625 (W.D. Wash. 2011) .............................................................. 17

*Gordon v. Biden*,
    364 Fed. Appx. 651 (D.C. Cir. 2010) ............................................................. 6

*Johnson v. Covenant Sec. Servs., Ltd.*,
    No. C13-1983RAJ, 2015 WL 11234168, at *1 (W.D. Wash. Nov. 12, 2015) ........................ 17

*LaMar v. H & B Novelty & Loan Co.*,
    489 F.2d 461 (9th Cir. 1973) ........................................................................ 22

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................ 22

*Maldonado v. Ochsner Clinic Found.*,
    493 F.3d 521 (5th Cir. 2007) ........................................................................ 9, 10

*Marlo v. United Parcel Serv., Inc.*,
    639 F.3d 942 (9th Cir. 2011) ........................................................................ 20

*Ovieda v. Sodexo Operations, LLC*,
    CV 12-1750-GHK SSX, 2013 WL 7174021 (C.D. Cal. Apr. 11, 2013) ......................... 5

*Rainier Beach Dev. Co., LLC v. King Cty.*,
    C16-0822-JCC, 2017 WL 3503334, at *3 (W.D. Wash. Aug. 16, 2017) ......................... 21

*Roppo v. Motor Cargo Inc.*,
    92 Wn. App. 1030 (Sep. 21, 1998) .............................................................. 17

*Speak v. University of Colorado Health*,
    2021 WL 5238423, at *5 (Colo. Dist. Ct.) ....................................................... 12

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ........................................................................ 8

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ........................................................................ 22

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - iii

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

*Valentino v. Carter–Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ................................................................................ 7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................ 6, 7, 11


**Statutes**

42 U.S.C.A. § 300gg-111(c)(2) ................................................................................ 13

42 U.S.C.A. § 300gg-111(c)(3)(A) ................................................................................ 14

42 U.S.C.A. § 300gg-111(c)(5)(C) ................................................................................ 13

45 CFR 149.510 ................................................................................ 13

45 CFR 149.510(c)(3)(i) ................................................................................ 14

45 CFR 149.510(c)(4)(iii) ................................................................................ 13

564 U.S. at 351 ................................................................................ 7

RCW 4.16.080 ................................................................................ 21

RCW 48.49.040 ................................................................................ 14

RCW 48.49.040(1)(b) ................................................................................ 15

RCW 48.49.040(3)(b) ................................................................................ 14

RCW 48.49.040(3)(d) ................................................................................ 14

RCW 70.170.060 ................................................................................ 20

WAC 246-453-070 ................................................................................ 20

WAC 284-43B-035 ................................................................................ 14, 15


**Rules**

Ala. R. Civ. P. 23 ................................................................................ 11

Colo. R. Civ. P. 23(a) ................................................................................ 12

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - iv

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

Fed. R. Civ. P. 12(b)(6) .................................................................................. 19

Fed. R. Civ. P. 2 ............................................................................................... 7

Fed. R. Civ. P. 23 ..................................................................................... *passim*

Fed. R. Civ. P. 23(a) .................................................................................. 6, 10

Fed. R. Civ. P. 23(a)(3) .................................................................................. 17

Fed. R. Civ. P. 23(b) ........................................................................................ 6

Fed. R. Civ. P. 23(b)(3) .................................................................................... 6

Fed. R. Civ. P. 23(c)(1) .................................................................................... 1

Ga. Code Ann. § 9-11-23(a)(2) ...................................................................... 11

LCR 23(i)(3) ..................................................................................................... 1

Rule 23(a)(2) ..................................................................................................... 7

Rule 23(b)(3) ................................................................................................. 7, 8


**Other**

American Medical Association, CPT 2021 Professional Edition at 22-23 ..................................... 3

Balance Billing Protection Act ............................................................... 14, 16

No Surprises Act, Division BB, Title I, Consolidated Appropriations Act, 2021,
    Public Law No. 116-260 (Dec. 27, 2020) ........................................... 13, 14

Washington Balance Billing Protection Act ............................................... 14

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - v

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

Pursuant to Fed. R. Civ. P. 23(c)(1) and LCR 23(i)(3), Defendants Columbia Valley Emergency Physicians, LLC, EmCare, Inc., EmCare Holdings, Inc., and Envision Healthcare Corporation (collectively, "Defendants") submit this motion to deny class certification and strike the class allegations from Plaintiff's complaint.

## I.    PRELIMINARY STATEMENT

Based on an allegation that Defendants charged unreasonable amounts to patients for healthcare services, Plaintiff Isela M. Maldonado purports to represent a class comprised of all individuals who were sent medical bills by Defendants within the past six years for amounts that exceed the highest in-network amounts paid by major private health insurance plans.  This Court should deny class certification as: (i) Plaintiff has failed to file a motion for class certification and has thus abandoned her class allegations; (ii) Plaintiff's putative class lacks commonality and typicality, and individual questions predominate over common questions; (iii) Plaintiff's putative class includes members whose claims are time-barred; and (iv) Plaintiff does not have standing to pursue claims against unnamed physician practices that have never provided any healthcare services to Plaintiff.  For these reasons, Plaintiff has failed to satisfy her burden of demonstrating that she has met the requirements for class certification, and this Court should strike the class allegations from Plaintiff's complaint.

## II.    PROCEDURAL HISTORY

On April 1, 2020, Plaintiff filed her Original Complaint in Washington Superior Court alleging four causes of action due to "exorbitant and unreasonable fees" charged by Defendants: (i) negligence, (ii) breach of implied contract, (iii) common law procedural unconscionability, and (iv) common law substantive unconscionability.  (Dkt 1-1).  After Defendants properly removed this action, they moved to dismiss the entirety of Plaintiff's Complaint or, in the alternative, to strike Plaintiff's class allegations.  (Dkt. 26).

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 1

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200    FAX (206) 407-2278

1   In response to Defendants' motion, this Court dismissed with prejudice Plaintiff's claims

2   for negligence and procedural and substantive unconscionability, but held that Plaintiff had

3   sufficiently pled a single claim for breach of implied contract. (Dkt. 41).  This Court further denied

4   without prejudice Defendants' motion to strike, after Judge Fricke recommended that the matter

5   of class certification "be deferred until the issue of class certification is litigated." (Dkt. 40 at 15).

6   This Court subsequently issued its Class Discovery and Certification Scheduling Order,

7   bifurcating discovery and directing the Parties to first engage in phase one discovery relating to

8   issues concerning class certification.  (Dkt. 49).  The Parties have since engaged in substantial fact

9   and expert discovery, and in anticipation of Plaintiff's motion for class certification, on October

10  15, 2021, Defendants filed their Motion for a Judicial Finding That the Opinion of Plaintiff's

11  Expert Karina L. Vega Has Little Or No Persuasive Value for Purposes of Class Certification.

12  (Dkt. 61).

13          Pursuant to the Court's Class Discovery and Certification Scheduling Order, Plaintiff's

14  motion for class certification was due on November 23, 2021.[1]  (Dkt. 49 at 2).  Plaintiff has not

15  filed her motion for class certification.

### III.    FACTUAL BACKGROUND

17          On January 15, 2019, Plaintiff Isela M. Maldonado went to the emergency department

18  ("ED") at Trios Health Southridge Hospital ("Trios Southridge") in Kennewick, Washington.[2]  At

19  Trios Southridge, she was evaluated by a physician affiliated with Columbia Valley Emergency

20  Physicians, LLC ("CVEP"), for which EmCare, Inc. ("EmCare") provides administrative and

21  management services (e.g., human resources management; revenue cycle management, including

22

23  [1] On July 30, 2021, the Court entered its Stipulation and Order to Continue Deadlines for Expert Reports, which
    continued the Parties deadlines for expert reports pursuant to Plaintiff's request.  (Dkt. 58).  The Court's July 30, 2021
24  Order provides that all deadlines other than those deadlines related to expert reports "remain in effect."

25  [2] Transcript of the Deposition of Isela M. Maldonado, dated June 25, 2021 ("Maldonado Dep."), Ex. A to the
    Declaration of Jonah D. Retzinger in Support of Defendants' Motion to Deny Class Certification and Strike Plaintiff's
    Class Allegations, dated December 20, 2021 ("Retzinger Second Dec."), at 39:16-40:22.

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 2

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200    FAX (206) 407-2278

1   billing, claims submission, and collections; marketing; technological and information support

2   systems; managed care contracting; provider credentialing; *etc.*).[3]   During her ED visit, Plaintiff

3   was diagnosed, treated, and discharged with instructions to follow-up with her primary care

4   provider.[4]

5          After Plaintiff was discharged, EmCare submitted a claim for $821.00 for an emergency

6   room evaluation and management service corresponding to Current Procedural Terminology

7   ("CPT") code 99283 to Plaintiff's healthcare insurer, Premera Blue Cross ("Premera").[5]   Months

8   passed, but EmCare never received any payment (or response) from Premera regarding CVEP's

9   claim.   Accordingly, on June 25, 2019, EmCare contacted Premera to inquire about the claim's

10  status.[6]   Premera informed EmCare that Plaintiff's health insurance plan covered 75 percent of

11  charges for out-of-network emergency room professional services, and consistent with the terms

12  of such plan, Premera had accepted the claim and paid $615.75 (*i.e.*, 75 percent of the charge) in

13  March 2019.[7]   However, since CVEP was out-of-network with Premera (*i.e.*, Premera did not have

14  an agreement with CVEP to pay contracted rates for services provided by CVEP providers to

15  beneficiaries of Premera's health plans, such as Plaintiff), Premera had elected to mail a check for

16

17

18

19  [3] Declaration of Andrew Weiss in Support of Defendants' Motion to Deny Class Certification and Strike Plaintiff's
    Class Allegations, dated December 20, 2021 ("Weiss Dec.") ¶ 3.

20  [4] Maldonado Dep. at 68:18-71:8.

21  [5] Weiss Dec. ¶ 4(a).  Emergency room professional evaluation and management services are billed using five different
    Current Procedural Terminology ("CPT") codes published by the American Medical Association: 99281, 99282,
22  99283, 99284, and 99285.  Each CPT code has a separate definition and corresponds to a different level of evaluation
    and management service, usually based on the severity of the patient's presenting problem(s).  CPT 99283 corresponds
23  to a "level 3" emergency department visit which usually is associated with presenting problem(s) "of a moderate
    severity."  *See* American Medical Association, CPT 2021 Professional Edition at 22-23 (providing commentary and
    definitions for CPT codes 99281-99285), Ex. C to the Declaration of Jonah D. Retzinger in Support of Defendants'
24  Motion for a Judicial Finding That the Opinion of Plaintiff's Expert Karina L. Vega Has Little or No Persuasive Value
    for Purposes of Class Certification, dated October 15, 2021 ("Retzinger First Dec.") (Dkt. 62-3).

25  [6] Weiss Dec. ¶ 4(b).

    [7] Weiss Dec. ¶ 4(c).

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200    FAX (206) 407-2278

1
2
$615.75, along with an associated Explanation of Benefits, to Plaintiff rather than make payment directly to CVEP.[8]

3
4
5
6
7
8
After Premera informed EmCare that it had sent a check for $615.75 to Plaintiff, EmCare sent a statement for $821.00 to Plaintiff for CVEP's services on July 30, 2019.[9]  On October 1, 2019, Plaintiff contacted EmCare and informed EmCare that Premera's check had expired, but she was requesting that Premera reprocess the check previously transmitted to her.[10]  On November 19, 2019 (*i.e.*, more than 10 months after Plaintiff visited the Trios Southridge ED), Plaintiff transmitted Premera's reprocessed check for $615.75 to EmCare.[11]

9
10
11
12
13
14
15
After receiving Premera's check, EmCare submitted an updated statement to Plaintiff for her remaining $205.25 cost-sharing responsibility/copayment (*i.e.*, 25 percent of the charge).[12] Plaintiff subsequently made three payments by debit card: (i) $50.00 on January 2, 2020; (ii) $50.00 on February 19, 2020; and (iii) $105.25 on February 28, 2020.[13]  While Trios Southridge has a financial assistance policy which would apply to CVEP's services, Plaintiff never attempted to seek financial assistance for her cost-sharing responsibility for CVEP's services or attempted to contact any Defendant to reduce her bill.[14]

16
## IV.    THE PUTATIVE CLASS

17
18
19
20
Plaintiff's complaint bundles together all of her allegations against CVEP and EmCare, Inc., EmCare Holdings, Inc., Envision Healthcare Holdings, Inc., and Envision Healthcare Corporation (without CVEP, the "Envision Defendants") and claims that all of the Defendants are

21
22
23
24
25

[8] *Id.*

[9] Weiss Dec. ¶ 4(d).

[10] Weiss Dec. ¶ 4(e).

[11] Weiss Dec. ¶ 4(f).

[12] Weiss Dec. ¶ 4(g).

[13] Weiss Dec. ¶ 4(h)-(j).

[14] Maldonado Dep. at 48:15-18, 74:16-25; Weiss Dec. ¶ 5.

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 4

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

1   liable because they charge "exorbitant and unreasonable" fees to patients.[15]  Plaintiff purports to

2   represent a class of patients who were sent medical bills: (i) by Defendants (including but not

3   limited to Defendants and any of Defendants' affiliates, subsidiaries, parents, successors,

4   predecessors, employees, contractors, agents, representatives, or assigns); (ii) within the past 6

5   years; (iii) for amounts that exceed the highest in-network amount paid by major private health

6   insurance plans for such services.  (Complaint ¶ 7.3).  Plaintiff claims that putative class members

7   were damaged "either by unjust monies paid to Defendants, [or] damage to Plaintiff's and the

8   Class' credit rating and financial balance/net worth."  (Complaint ¶ 8.23).  Among other relief,

9   she seeks an order prohibiting Defendants "from marking up medical costs above usual and

10  customary amounts;" damages; and restitution associated with "clearing credit history or credit

11  rating." (Complaint ¶ 9.3).

## V.    ARGUMENT

A.    **Plaintiff's Class Allegations Must Be Struck Because Plaintiff Has Failed to File a Motion in Support of Class Certification.**

15          As an initial matter, Plaintiff has failed to file her motion for class certification by the

16  November 23, 2021 deadline set forth in the Court's December 11, 2020 Class Discovery and

17  Certification Scheduling Order (Dkt. 49).   The failure to file such motion is "in effect, a

18  determination by plaintiff[] that [she] will proceed only with [her] individual claims."  *Duncan v.*

19  *Alameda Cty. Fire Dep't*, C-08-5486 MMC, 2010 WL 703099 at *1 (N.D. Cal. Feb. 25, 2010).

20  Consequently, Plaintiff's class claims must be struck.  *See, e.g., Ovieda v. Sodexo Operations,*

21  *LLC*, CV 12-1750-GHK SSX, 2013 WL 7174021 (C.D. Cal. Apr. 11, 2013) (striking the class

22  allegations in the plaintiffs' complaint because the plaintiffs did not file a motion for class

---

[15] Plaintiff alleges that CVEP is wholly owned by the Envision Defendants and the Envision Defendants are all "alter egos of one another."  (Complaint, Dkt. 1-1, ¶ 2.15).  When Defendants argued in their Motion to Dismiss that Plaintiff's complaint impermissibly failed to plead individualized allegations against each Defendant, Judge Fricke acknowledged that Plaintiff's allegations "bundled together" the Defendants, but Judge Fricke held that Plaintiff's allegations were sufficient for purposes of Fed. R. Civ. P. 8's notice pleading standard.  (Dkt. 40 at 4-5).  Plaintiff, having now had an opportunity to conduct discovery, can offer no evidence to support her allegations.

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 5

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

1   certification by the deadline set forth in the court's scheduling order); *Duncan*, 2010 WL 703099

2   (striking the class action allegations in the plaintiffs' complaint because the plaintiffs did not file

3   a motion for class certification within the time set forth by the court); s*ee also Gordon v. Biden*,

4   364 Fed. Appx. 651, 652 (D.C. Cir. 2010) (the Court of Appeals for the D.C. Circuit determining

5   that "the district court correctly held that [plaintiff] could not proceed as a representative of a class

6   because he did not file a class certification motion.").

7          For this reason alone, the Court should strike Plaintiff's class allegations.

8   **B.      The Putative Class Is Not Certifiable.**

9          Separate and apart from Plaintiff's failure to file a motion in support of class certification,

10  Plaintiff's putative class also is not certifiable.  The class action is "an exception to the usual rule

11  that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp.*

12  *v. Behrend*, 569 U.S. 27, 33 (2013) (internal citation omitted).  Class certification is governed by

13  Fed. R. Civ. P. 23.  *See Bess v. Ocwen Loan Servicing LLC*, 334 F.R.D. 432, 435 (W.D. Wash.

14  2020) (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011)).  Fed. R. Civ. P. 23(a)

15  provides that class actions must satisfy four prerequisites: (1) numerosity, (2) commonality, (3)

16  typicality, and (4) adequacy of representation.  *Id*.  In addition, class actions must satisfy at least

17  one of the requirements of Fed. R. Civ. P. 23(b).  *Bess*, 334 F.R.D. at 435 (internal quotations and

18  citations omitted).  Plaintiff claims to represent a class certifiable under Fed. R. Civ. P. 23(b)(3).

19  (Complaint ¶ 7.9).  Fed. R. Civ. P. 23(b)(3) provides that a class action may be maintained if

20  "questions of law or fact common to class members predominate over any questions affecting only

21  individual members" (*i.e.*, the predominance requirement) and "a class action is superior to other

22  available methods for fairly and efficiently adjudicating the controversy" (*i.e.*, the superiority

23  requirement).

24         Fed. R. Civ. P. 23 does not set forth a mere pleading standard. *Dukes*, 564 U.S. at 350.

25  Rather, "[a] party seeking class certification must affirmatively demonstrate [her] compliance with

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 6

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

[Fed. R. Civ. P. 23]." *Id*.  Before certifying a class, the Court must conduct a "rigorous analysis" to ensure that the plaintiff has produced evidence sufficient to show that class certification is warranted. *Id.,* 564 U.S. at 351.  As the purported class representative, Plaintiff bears the burden of demonstrating that she has met each of the requirements for class certification set forth Fed. R. Civ. P. 23.  *Bess*, 334 F.R.D. at 435 (internal quotations and citations omitted).

Here, irrespective of Plaintiff's failure to provide any evidence to meet her burden, Plaintiff's putative class fails to satisfy the requirements of Fed. R. Civ. P. 23 because it lacks commonality, individual questions predominate over common question, and it lacks typicality.

### 1.  The Putative Class Lacks Commonality and Individual Questions Predominate Over Common Questions.

The commonality and predominance elements of class certification have overlapping considerations.  *See, e.g.*, *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy."); *Beaty v. Ford Motor Co.*, Case No. C17-5201 TSZ, 2021 WL 3109661, at *9 (W.D. Wash. July 22, 2021) ("[T]he test of commonality under Rule 23(a)(2) is generally subsumed by the predominance requirement under Rule 23(b)(3)…").

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 349-50 (citation and quotation omitted).  To satisfy commonality, the claims must depend on a common contention "that is capable of classwide resolution."  *Id*. at 350.  "What matters to class certification…is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  *Id*. (quotation and citation omitted) (emphasis added).  "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  *Id*. (quotation and citation omitted).

DEFENDANTS' MOTION TO DENY CLASS CERTIFICATION AND STRIKE PLAINTIFF'S CLASS ALLEGATIONS (No. 3:20-cv-05428-DGE) - 7

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Courts must give careful scrutiny to the relation between common and individual questions in a case, and the Rule 23(b)(3) predominance inquiry asks the court to make a global determination of whether common questions prevail over individualized ones. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (citation and quotation omitted).

In this case, Plaintiff purports to represent class of patients based on allegations that fees charged for healthcare services are unreasonable. However, Plaintiff's putative class does not satisfy the commonality and predominance requirements of Fed. R. Civ. P. 23 because determining the reasonableness of healthcare charges requires individualized inquiries that depend on different patient-specific, physician practice-specific, service-specific, and time-specific considerations.

Courts, legislatures, and healthcare pricing experts around the country have recognized that determining the reasonable value of any particular healthcare service requires analyzing a multitude of factor**s**. These factors include, but are not limited to: (i) the direct and indirect costs associated with providing the healthcare service, including provider compensation, administrative costs, and overhead; (ii) the patient's particular health conditions; (iii) the specific service provided to the patient; (iv) comparable physician practices' charges for a comparable service; (v) the time period in which the service was provided; (vi) the "payer mix" of the patient population (*i.e.*, the percentage of patients with no insurance versus government insurance versus commercial

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 8

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

1  insurance) treated by the physician practice at the time the care was provided; and (vii) provisions

2  of healthcare provider arrangements that materially impact costs.[16]

3       Because of these various, encounter-specific considerations, federal courts have refused to

4  certify classes alleging unreasonable charges in healthcare pricing disputes given the fact-specific

5  rather than class-oriented nature of determining whether charges for healthcare services are

6  reasonable.  These courts have routinely held that plaintiffs in such cases fail to satisfy the

7  commonality and predominance requirements of Fed. R. Civ. P. 23.  For example, in *Maldonado*

8  *v. Ochsner Clinic Found.*, 493 F.3d 521 (5th Cir. 2007), the Fifth Circuit Court of Appeals affirmed

9  the district court's denial of class certification in a case where the plaintiffs alleged that a health

10  care provider was liable because it charged uninsured patients standard rates for healthcare services

11  that were more than rates paid by insured patients' healthcare plans (*i.e.,* an allegation nearly

12  identical to Plaintiff's allegation in this case).  In affirming the denial of class certification, the

13  Fifth Circuit stated:

14       "The amount patients were charged and the amount that is 'reasonable' for the
15       services they received is necessarily an individual inquiry that will depend on the
         specific circumstances of each class member, the time frame in which care was
16       provided, and both [the health care provider's] and other [health care provider's]
         costs at that time…[T]he reasonableness of medical fees depends on multiple
17       factors, including the services rendered, patient's financial status, and customary
         fee for similar services….The fact-specific rather than class-oriented nature of the
18       claims thus predominates not only at the plaintiffs' level, since two patients' care
         and financial circumstances are hardly ever comparable, but also in determining a
19       'reasonable' charge for each service from among the melange of third-party payer
20       discounts."

---

21  [16] *See* Expert Report of William O. Cleverley, Ph.D., Ex. B to Retzinger Second Dec. at pp. 2-3 (opining on the
22  different factors affecting the reasonableness of a charge for a physician professional service).  While Defendants
     maintain that the Court should also assign little to no value to Plaintiff's expert Karina L. Vega for the many reasons
23  provided in Defendants' Motion for a Judicial Finding That the Opinion of Plaintiff's Expert Karina L. Vega Has
     Little or No Persuasive Value for Purposes of Class Certification (Dkt. 61), even the sole authority relied upon by Ms.
     Vega in rendering her opinion in this matter provides that: "Many factors influence the pricing of health care services
24  in the United States as a significant amount of these services are localized and are subject to both market and certain
     non-market conditions that are unique to medical services.  Labor markets, and cost-of-living and cost-of-practice or
25  entity operations vary considerably by locality…[F]actors such as physician supply, the effect of managed care market
     penetration, or the amount of hospital competitiveness in [a service] area [influence the price of a health care service]."
     *See* Wasserman 2019 Physicians' Fee Reference Introduction, Ex. H to the Retzinger First Dec. (Dkt. 62-8) at 1.

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 9

*Maldonado,* 493 F.3d at 524-26 (internal citations omitted)*; see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 264 n. 1 (3d Cir. 2008) (the Third Circuit Court of Appeals suggesting, in the context of affirming a district court order granting a health system's motion for judgment on the pleadings in a case involving class allegations that the health system was liable because its charges were unreasonable, that class action status was inappropriate because "[e]ach member of the class would have had a different condition, requiring different remedies, and a different calculation of a 'reasonable' fee.").

Similarly, in *Day v. Sarasota Doctors Hosp., Inc.*, Case No. 8:19-CV-1522-T-33TGW, 2020 WL 4539145 (M.D. Fla. July 23, 2020), the plaintiff sought class certification in a case in which plaintiff alleged that a hospital was liable because it charged patients covered by personal injury protection insurance unreasonable rates for emergency room services.  In denying the plaintiff's motion for class certification, the court found:

> "The question of whether class members were billed unreasonable rates is the antithesis of a common question and will not generate common answers…As numerous courts have recognized, determining the reasonableness of charges for medical services entails an individualized, fact-dependent analysis…[which would] involve[] an examination of the specific services rendered in each instance,…consideration of [the hospital's] usual charges and payments accepted, reimbursement levels in the community, prices charged to patients with other insurance, and other relevant information for each particular service…None of the evidence underlying these factors will be the same for any two class members, unless they received the same services during a similar time frame."

*Day,* 2020 WL 4539145 at *6 (citations and quotations omitted); *see also Colomar v. Mercy Hospital, Inc.*, 242 F.R.D. 671, 676-77 (S.D. Fla. 2007) (holding that plaintiff failed to satisfy the commonality element of Fed. R. Civ. P. 23(a) and declining to certify a class of hospital patients challenging the reasonableness of charges for healthcare services because "the legality—or ultimate reasonableness—of [the hospital's] charges c[ould] only be determined by looking at the specific bills in question and analyzing them against factors like the market rate for the same

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 10

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

services at other hospitals, [the hospital's] internal costs for those particular services, and the prices [the hospital] charged for those services to patients with health insurance or other benefits.").

Several state supreme courts similarly have held that class action status is inappropriate in cases involving the reasonableness of charges for healthcare services because the commonality and predominance elements required for class certification under state procedural rules were not satisfied.  In *Bowden v. Med. Ctr., Inc.*, 309 Ga. 188 (Ga. 2020), an uninsured patient brought a class action in Georgia against a hospital alleging that the hospital charged patients unreasonable rates for medical care, which the hospital then used as a basis for filing hospital liens against any potential tort recoveries by patients.  After the trial court initially granted class certification, the Supreme Court of Georgia reversed on the basis that the plaintiff's putative class did not satisfy the commonality requirement set forth in Ga. Code Ann. § 9-11-23(a)(2).  In so holding, the Supreme Court of Georgia stated:

> "[D]issimilarities within the proposed class…impede the generation of common answers the common question raised…[W]hile the question of what is a reasonable charge is common to the class, the answer to that question still varies from class member to class member and is not subject to being resolved 'in one stroke' for the entire class, which defeats commonality, and which in turn undermines the animating purpose of a class action lawsuit…[T]here is no 'one size fits all' answer to the question of what may or may not constitute a reasonable charge for each individual patient in the purported class here."

*Bowden v. Med. Ctr., Inc.*, 309 Ga. at 195-98 (citing and quoting *Dukes*, 564 U.S. at 350).

Likewise, in *Eufaula Hosp. Corp. v. Lawrence*, 32 So. 3d 30 (Ala. 2009), the plaintiff filed a putative class action in Alabama on behalf of a purported class of self-pay patients alleging that certain hospitals' emergency room charges were unreasonable.  While the trial court initially granted class certification, the Supreme Court of Alabama vacated the trial court's certification order, holding that the plaintiff's purported class did not satisfy the commonality requirement of Ala. R. Civ. P. 23 because:

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 11

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

> "[A] determination of a reasonable fee requires an individual analysis of each medical service provided each class member…[including] an examination of the circumstances of the charges for the services, the customs in the medical-service community, the price a willing provider would take for its services, and the price a recipient of those services would pay."

*Eufaula*, 32 So. 3d at 43-46; *see also Converse v. Vizio, Inc.*, C17-5897 BHS, 2020 WL 729804, at *5 (W.D. Wash. Feb. 13, 2020), reconsideration denied, C17-5897 BHS, 2020 WL 2922490 (W.D. Wash. June 3, 2020) (holding that the plaintiff's class was also not certifiable in a breach of implied contract action because inquiries as to whether a breach occurred would have be conducted on an individual basis and "[i]ndividual issues would thus predominate over common issues."); *Speak v. University of Colorado Health*, 2021 WL 5238423, at *5 (Colo. Dist. Ct.) (denying class certification in a Colorado action in which the plaintiff sought relief due to a hospital's emergency department billing practices because the plaintiff failed to satisfy the commonality requirement under Colo. R. Civ. P. 23(a)).

There is a prudential aspect to courts' refusal to engage in determinations about the reasonableness of charges for healthcare services: the pricing of healthcare is generally the province of the legislature, not the judiciary.  As the Third Circuit Court of Appeals explained in *DiCarlo*, 530 F.3d at 264, in the context of hospital services:

> "A court could not possibly determine what a 'reasonable charge' for hospital services would be without wading into the entire structure of providing hospital care and the means of dealing with hospital solvency. These are subjects with which state and federal executives, legislatures, and regulatory agencies are wrestling and which are governed by numerous legislative acts and regulatory bodies. For a court to presume to address these problems would be rushing in where angels fear to tread."

Indeed, the legislative actions taken by both the federal government and the state of Washington to address disputes regarding pricing for healthcare services illustrate that such disputes simply are not suitable for resolution on a class-wide basis.  On December 27, 2020, the

DEFENDANTS' MOTION TO DENY CLASS CERTIFICATION AND STRIKE PLAINTIFF'S CLASS ALLEGATIONS (No. 3:20-cv-05428-DGE) - 12

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

U.S. Congress enacted the No Surprises Act (the "NSA").[17]   The NSA created a robust federal independent dispute resolution ("IDR") process to address healthcare pricing disputes in certain circumstances, including circumstances when an emergency physician practice, like CVEP, is out-of-network and an insured patient's healthcare insurer disagree about whether a charge for a particular emergency room professional service is reasonable (though notably, in this case, Plaintiff's healthcare insurer, Premera, accepted the amount charged for the service provided by CVEP on January 15, 2019 and did not dispute it).[18]

The NSA and implementing regulations list different considerations that must be considered when determining what is a reasonable charge for an emergency service.  These mandatory considerations include: (i) the patient's insurer's median contracted rate for the service (*i.e.*, the "qualifying payment amount"); (ii) the level of training, experience, and quality and outcomes measurements of the provider that furnished the emergency service; (iii) the market share held by the provider or patient's health insurer in the geographic region in which the emergency service was provided; (iv) the acuity of the patient, or the complexity of furnishing the emergency service to the patient; (v) the teaching status, case mix, and scope of services of the hospital in which the emergency service was provided; and (vi) demonstration of good faith efforts (or lack thereof) made by the provider or the patient's insurer to enter into network agreements with each other, and, if applicable, contracted rates between the provider and the patient's insurer, during the previous four years.[19]

Because these unique considerations vary by patient encounter, the NSA further provides that a provider or healthcare insurer may only "batch" claims in a single action under the federal

---

[17] The No Surprises Act is contained in Division BB, Title I of the Consolidated Appropriations Act, 2021, Public Law No. 116-260 (Dec. 27, 2020).

[18] *See* 42 U.S.C.A. § 300gg-111(c)(2)(setting forth the federal independent dispute resolution process for healthcare pricing disputes between insurers and out-of-network providers under the No Surprises Act); *see also* 45 CFR 149.510 (containing regulations for the federal independent dispute resolution process).

[19] *See* 42 U.S.C.A. § 300gg-111(c)(5)(C); 45 CFR 149.510(c)(4)(iii).

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 13

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

IDR process if the claims are billed: (1) by the same provider or group; (2) to the same healthcare insurer; (3) for the same emergency service; (4) within the same 30-business-day period (or the same 90-calendar-day period, depending on the IDR entity's determination).[20]   Simply put, the NSA—which was specifically designed to address the types of healthcare pricing disputes at issue in this litigation—recognizes that the circumstances of any particular patient encounter are not common and class status is not appropriate when resolving healthcare pricing disputes.

The Washington State Legislature has taken a similar approach.  Prior to the enactment of the NSA, on May 21, 2019, Washington enacted the Balance Billing Protection Act which is also designed to address medical pricing disputes.  The Washington Balance Billing Protection Act creates a separate dispute resolution/arbitration process for disputes between health insurers and out-of-network providers regarding reasonable charges for emergency services.[21]   It provides several factors that the arbitrator must consider when rendering a decision as to what amounts to a reasonable charge for an emergency service, including: (i) the evidence and methodology submitted by the health insurer and out-of-network provider; and (ii) patient characteristics and the circumstances and complexity of the case, including the time and place of service and whether the service was delivered at a trauma center or a rural facility.[22]   The arbitrator may also consider any other information that a party or the arbitrator believes is relevant for the particular patient, provider, and service at issue.[23]   The Washington Balance Billing Protection Act further provides that multiple claims for emergency services may be addressed in a single arbitration proceeding only if the claims at issue occur within a period of two months of one another and involve:

---

[20] *See* 42 U.S.C.A. § 300gg-111(c)(3)(A); 45 CFR 149.510(c)(3)(i).

[21] *See* RCW 48.49.040; WAC 284-43B-035.

[22] *See* RCW 48.49.040(3)(b).

[23] *See* RCW 48.49.040(3)(d).

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 14

(i) identical healthcare insurers; (ii) identical emergency providers; and (ii) identical procedure codes.[24]

Fundamentally, resolution of healthcare pricing disputes simply is not suitable for class resolution as resolving the question of whether a particular charge is reasonable requires an individualized inquiry that takes into account the unique factors associated with each patient encounter. Defendants' expert, William O. Cleverley ("Cleverley"), Ph.D., a decorated former Professor Emeritus at The Ohio State University who has spent his entire career researching pricing in the healthcare industry and advising healthcare industry participants with respect to financial management issues, opined on why individualized inquiries are necessary (especially in the context of ED services) in his expert report:

> "It is impossible to employ a methodology that accurately incorporates all of the critical factors that determine the reasonableness of a specific service charge and apply that across different encounters.
>
> First, no general methodology could be used to recognize what is a reasonable medical charge across different medical groups, as the specific factors [affecting the reasonableness of a charge for a physician professional service] (such as variations in payer mix, costs, and hospital contract provisions) impact the determination of a reasonable charge, which make it impossible to develop a methodology to adequately determine the reasonableness of the charges across groups.
>
> Second, no methodology for determining reasonable charges can be applied within a medical group over time. The same factors that lead to variance in charges across medical groups will also apply to a given medical group over time. Material factors may and often do change quickly, such as new legislation which may impact operating costs, or the covid pandemic, which changed operating conditions for medical practices and caused many hospital Emergency Departments to experience dramatic swings in volumes which affected staffing needs and their underlying costs.
>
> Furthermore, in order to determine whether a charge for a specific service provided during an ED visit is reasonable, one must first assess whether the CPT code assigned to the claim is appropriate. The coding process involved in assigning a

---

[24] *See* RCW 48.49.040(1)(b); WAC 284-43B-035(3).

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 15

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

specific CPT code is not objective and is especially difficult in assigning ED levels. CPT codes have definitions which provide guidance, but they are still subject to interpretation.

In sum, because material factors are different between sites of service, and because material factors are dynamic and not static and change over time, it is my opinion that analyzing whether a charge for a physician professional service is reasonable requires considering all of the different material factors at the time a professional service was provided."[25]

Using Plaintiff's January 15, 2019 Trios Southridge ED visit as an example, a reasonable analysis would need to take into account considerations like: (i) CVEP's direct and indirect costs associated with providing emergency room professional services, including physician and mid-level compensation, CVEP's administrative costs, and overhead on January 15, 2019; (ii) Plaintiff's particular health conditions when she presented to the Trios Southridge ED, and whether the service provided to her by CVEP was coded appropriately as a service corresponding to CPT code 99283; (iii) what comparable physician practices' charges for CPT code 99283 were on January 15, 2019; and (iv) what the "payer mix" of CVEP's patient population was during the time period that Plaintiff received treatment from CVEP (*i.e.*, the percentage of CVEP's patients with no insurance versus government insurance versus commercial insurance). These are only a few of the many potential factors that could impact the reasonableness analysis for any particular patient encounter.

The time component of this analysis also cannot be discounted, as considerations relevant to the reasonableness analysis can change dramatically over time, even with respect to the same service provided by the same physician practice at the same location. For example, two major events occurred during the limitations period applicable to Plaintiff's breach of implied contract claim: (1) the COVID-19 pandemic, which significantly increased service costs for healthcare providers and resulted in radically reduced patient volumes; and (2) the Washington State Legislature passed the Balance Billing Protection Act, which contained patient cost-sharing

---

[25] Expert Report of William O. Cleverley, Ph.D., Ex. B to Retzinger Second Dec. at pp. 3-4.

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 16

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

1   limitations and reduced the amount recoverable from patients for emergency services. Both of

2   these events—in addition to countless other market changes—had dramatic impacts on the

3   economics of emergency physician practices, like CVEP, in Washington and across the nation.

4        Washington tort actions perhaps provide the best illustration of the individualized nature

5   of healthcare pricing disputes, as the question of whether any charge for a specific healthcare

6   service at a particular time is reasonable often is litigated fiercely in such actions. *See, e.g.*,

7   *Johnson v. Covenant Sec. Servs., Ltd.*, Case No. C13-1983RAJ, 2015 WL 11234168, at \*1 (W.D.

8   Wash. Nov. 12, 2015) (denying the plaintiff's renewed request for the Court to determine the

9   necessity and reasonableness of healthcare expenses because the plaintiff did not meet his burden

10   in proving that the charges for the specific healthcare services provided to him were reasonable);

11   *Beltran-Serrano v. City of Tacoma*, 10 Wn. App. 2d 1002 (Aug. 20, 2019) (the Court of Appeals

12   of Washington, Division 2, addressing the treatment of expert opinions regarding the issue of

13   reasonable healthcare services for purposes of summary judgment); *Roppo v. Motor Cargo Inc.*,

14   92 Wn. App. 1030 (Sep. 21, 1998) (the Court of Appeals of Washington, Division 1, holding that

15   the trial court did not err in excluding rates paid by public payers in connection with a dispute

16   concerning the reasonableness of charges for healthcare services).

17        For these reasons, Plaintiff fails to satisfy the commonality and predominance requirements

18   of Fed. R. Civ. P. 23.

19       **2.**    **The Putative Class Lacks Typicality.**

20        Plaintiff's purported class also violates the typicality requirement of Fed. R. Civ. P.

21   23(a)(3). "The test of typicality 'is whether other members have the same or similar injury,

22   whether the action is based on conduct which is not unique to the named plaintiffs, and whether

23   other class members have been injured by the same course of conduct.'" *Fosmire v. Progressive*

24   *Max Ins. Co.*, 277 F.R.D. 625, 632 (W.D. Wash. 2011) (*quoting Ellis v. Costco Wholesale Corp.*,

25   657 F.3d 970, 984 (9th Cir. 2011).

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 17

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

Here, Plaintiff's claim is not typical of the class because class members received different services from different physician practices at different times.   In addition to providing administrative and management services for CVEP, EmCare provides administrative and management services to thousands of other physician practices providing emergency medicine, critical care, hospital medicine, radiology, surgical, obstetrics and gynecology, pediatric, and neonatology services throughout the state of Washington and the United States.[26]   While Plaintiff suggests in conclusory fashion that she has the same interests as all other members of the Class that she represents, mere generalizations do not meet the standard for establishing that Plaintiff and the unnamed class members share the same interests or suffer the same injury.

As a practical matter, adjudicating the class claims would involve different physician practices, different hospitals with different financial assistance policies, different medical services, different billing codes, and different defenses; thus, an entirely different set of facts and legal conclusions. In other words, evidence of the reasonableness of Plaintiff's charges would do virtually nothing to advance the claims of the class as a whole. *See, e.g., Day v. Sarasota Doctors Hosp., Inc.*, 8:19-CV-1522-T-33TGW, 2020 WL 4539145, at *7 (M.D. Fla. July 23, 2020) (finding that the plaintiff failed to demonstrate that his claims were typical of the putative class in an action alleging liability due to unreasonable rates for emergency room services because even though class members shared the same general interest in being charged reasonable amounts for emergency room services, each class member's claim would require "a fact-intensive analysis of…charges for the particular services rendered in each instance.").

Indeed, Plaintiff represented to this Court that the class is defined "without reference to geographic location" because Plaintiff alleges that the conduct forming the basis for Plaintiff's claim "is occurring on a national basis."[27]   In other words, Plaintiff alleges a national class of

---

[26] Weiss Dec. ¶ 6.

[27] Transcript of December 11, 2020 Discovery Conference, Ex. C to Retzinger Second Dec., at 10:11-23.

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 18

patients.  Different state laws applicable to breach of implied contract claims would apply to patients who received emergency room professional services in different states.  Furthermore, Plaintiff—who admits to using the ED rather than a "regular doctor" because she "can get seen by somebody there faster—is not in the same situation as a patient who may present to the ED in an unconscious state or who otherwise cannot choose another provider.[28]  Nor is Plaintiff—whose credit score was not impacted by the bill for CVEP's services—in the same position as a patient who may have his or her credit score impacted by a medical bill.[29]

This case is also Plaintiff's counsel's "second bite at the apple," having had a complaint asserting identical allegations dismissed by the U.S. District Court for the District of New Mexico, which was affirmed on appeal by the Tenth Circuit Court of Appeals.  *See Armijo v. Affilion, LLC*, Case No. CV 19-750 KG/GJF, 2020 WL 2797685 (D.N.M. May 29, 2020), aff'd, 854 Fed. Appx. 236 (10th Cir. Mar. 23, 2021).  In *Armijo*, Plaintiff's counsel filed a complaint on behalf of an <u>identical</u> purported class against the Envision Defendants and a different emergency physician practice in New Mexico for which EmCare provided administrative and management services. The *Armijo* complaint asserted the same four causes of action: negligence, breach of implied contract, and common law procedural and substantive unconscionability.[30]

The U.S. District Court for the District of New Mexico dismissed with prejudice the *Armijo* complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  In affirming the dismissal, the Tenth Circuit Court of Appeals found that the *Armijo* plaintiffs had specifically not stated a breach of implied contract claim because their complaint contained "no factual allegations regarding the formation or terms of the contract to be implied from the parties'

---

[28] Maldonado Dep. at 41:20-24.

[29] *See* Expert Report of John Ulzheimer, Ex. D to Retzinger Second Dec. (opining that an analysis would have to be performed on each individual class member to determine if a class member's medical bill had any material impact on the class member's credit report or credit score).

[30] First Amended Complaint, *Armijo v. Affilion, LLC*, Case No. CV 19-750 KG/GJF (D.N.M.) (Dkt. 20-A), Ex. E to Retzinger Second Dec.

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 19

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

1  conduct…[including] any facts regarding (1) the intake procedures at [the hospital at which the

2  plaintiffs received ED services] and what representations, if any, were made during that process,

3  or (2) the medical services they received and the reasonable cost of those services." *Armijo v.*

4  *Affilion, LLC*, 854 Fed. Appx. 236, 240–41 (10th Cir. 2021).  The Court also noted that "contract

5  formation may be at issue" for certain members of the purported class because they "may have

6  been incoherent or unconscious at the time the contracts were allegedly formed."[31]  *Id.*

7        Plaintiff disregards these considerations entirely, as well as a fundamental, fatal issue with

8  her purported class: the terms of the implied contracts that she alleges have been breached vary

9  from class member to class member.  As the party seeking class certification, Plaintiff bears the

10  burden of demonstrating that the requirements of Fed. R. Civ. P. 23 are met.  *Marlo v. United*

11  *Parcel Serv., Inc.,* 639 F.3d 942, 947 (9th Cir. 2011).  However, Plaintiff offers absolutely no

12  evidence that would enable this Court to conclude that the terms of the implied contracts (or the

13  circumstances giving rise to such implied contracts) are the same for each class member, even

14  within the state of Washington.  She provides no evidence with respect to intake documents or

15  procedures at Trios Southridge or any other hospital, nor does she even address that hospitals in

16  Washington have <u>different</u> charity care policies.[32]  These charity care policies differ in many ways,

17  including in regards to which patients actually qualify for charity care.  For example, the charity

18  care policy for Trios Southridge provides that charity care is available for patients who have an

19  "annual household income equal to or below 250% of the federal poverty standard, adjusted for

20  family size," but the charity care policy for Astria Toppenish Hospital provides that charity care

[31] The Tenth Circuit had not yet issued its Opinion in *Armijo* when Judge Fricke issued her Report and Recommendation on Defendants' Motion to Dismiss.  Unlike the District Court in *Armijo*, Judge Fricke in this action determined that Plaintiff's allegations were sufficient only for purposes of <u>alleging</u> a plausible claim for breach of implied contract.  (Dkt. 40 at 8-11).  However, while Plaintiff has now had an opportunity to conduct discovery, Plaintiff has failed to set forth any additional facts to show that her claim meets the typicality requirement.

[32] Pursuant to RCW 70.170.060 and WAC 246-453-070, hospitals in Washington are required to have charity care policies which must be submitted to the Washington State Department of Health for review and approval.  Charity care policies for every hospital in the state of Washington are publicly available online at: https://www.doh.wa.gov/DataandStatisticalReports/HealthcareinWashington/HospitalandPatientData/HospitalPolicies#heading28778.

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 20

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

is available to "financially indigent patient[s]…[whose] total household income [is] at or below 300% of the current Federal Poverty Income Guidelines…"[33]   PeaceHealth United General Medical Center's financial assistance policy further provides that financial assistance is available for patients who have an annual income up to 400% of the federal poverty level.[34]   Each of these policies was also revised during the limitations period applicable to Plaintiff's claim, meaning that different charity care policies applied even to patients who may have gone to the same ED to receive care.   While Plaintiff elected not to pursue financial assistance for CVEP's services (or otherwise attempted to contact any of the Defendants to reduce her bill), she certainly does not meet the typicality requirement with respect to patients who did seek financial relief through standard procedures.[35]

## C.   Plaintiff's Putative Class Includes Class Members Whose Claims Are Time-Barred.

Separate and apart Plaintiff's failure to satisfy Fed. R. Civ. P. 23's commonality, predominance, and typicality requirements, Plaintiff's putative class includes patients with time-barred claims.   Plaintiff's sole remaining claim is for breach of implied contract.   Under Washington law, the limitations period applicable to a breach of implied contract claim is three years.  *Rainier Beach Dev. Co., LLC v. King Cty.,* C16-0822-JCC, 2017 WL 3503334, at *3 (W.D. Wash. Aug. 16, 2017) (citing RCW 4.16.080).   However, Plaintiff's putative class includes individuals sent medical bills in the past six years. (Compl. ¶ 7.3).

## D.   Plaintiff Does Not Have Standing to Assert Breach of Implied Contract Claims Against Unnamed Physician Practices That Did Not Provide Services to Plaintiff.

Finally, Plaintiff also simply does not have standing to pursue breach of implied contract claims against physician practices—unnamed in this litigation—which never provided a service to

---

[33] Trios Health Charity Care Policy, Ex. F to Retzinger Second Dec.; Astria Toppenish Hospital Charity Care Policy, Ex. G to Retzinger Second Dec.

[34] PeaceHealth United General Medical Center Financial Assistance Policy, Ex. H to Retzinger Second Dec.

[35] Maldonado Dep. at 48:15-18, 74:16-25; Weiss Dec. ¶ 5.

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 21

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278

Plaintiff. Constitutional standing requires a plaintiff to demonstrate: (1) an injury in fact; (2) traceability, *i.e.*, a causal connection between the injury and the actions complained of; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A plaintiff having a cause of action against one entity cannot represent a class with actions against entities who have behaved similarly but have not injured the plaintiff. *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) (*citing LaMar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973).

Here, Plaintiff's sole remaining cause of action is breach of implied contract relating to an emergency room professional service provided by CVEP on January 15, 2019 at Trios Southridge. CVEP (*i.e.*, the actual entity that provided an emergency room professional service to Plaintiff) is the only Defendant that has contractual privity with Plaintiff. Plaintiff thus can trace her alleged injury to only CVEP. As to any other Defendant or physician practice, Plaintiff does not allege a traceable injury. Furthermore, while Plaintiff has no contractual privity with EmCare, she has also offered no evidence whatsoever to justify piercing the corporate veil as to the Envision Defendants that are parent corporations of EmCare.[36] *See Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, C08-1372 RSM, 2010 WL 2079694, at \*5 (W.D. Wash. May 20, 2010), *aff'd*, 447 Fed. Appx. 814 (9th Cir. 2011) (*quoting United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.").

## VI.   CONCLUSION

Not only has Plaintiff failed to seek class certification, but her purported class is not certifiable under Fed. R. Civ. P. 23. For these reasons, Defendants ask that the Court deny class certification and strike the class allegations in Plaintiff's complaint.

---

[36] *See* Defendants' Amended Corporate Disclosure Statement (Dkt. 46) (providing the relationships between the Envision Defendants).

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 22

1  Dated: December 21, 2021.

2                                                        **EPSTEIN BECKER GREEN**

3                                              By: *s/ Jonah D. Retzinger*
4                                                        R. David Jacobs, CA Bar #73545
                                                         Jonah D. Retzinger, CA Bar #326131
5                                                        Brock Seraphin, CA Bar #307041
                                                         *Admitted Pro Hac Vice*
6                                                        1925 Century Park East, Suite 500
                                                         Los Angeles, CA 90067-2506
7                                                        Tel: 310.556.8861
                                                         Email: DJacobs@ebglaw.com
8                                                                    JRetzinger@ebglaw.com
                                                                     BSeraphin@ebglaw.com
9

10                                                     **CALFO EAKES LLP**

11                                            By: *s/ Matthew A. Carvalho*
12                                                       Angelo Calfo, WSBA #27079
                                                         Matthew A. Carvalho, WSBA #31201
13                                                       1301 Second Avenue, Suite 2800
                                                         Seattle, WA 98101
14                                                       (206) 407-2210 | Phone
                                                         Email: angeloc@calfoeakes.com
15                                                                  mattc@calfoeakes.com

16                                                     *Attorneys for Defendants*

17

18

19

20

21

22

23

24

25

DEFENDANTS' MOTION TO DENY CLASS
CERTIFICATION AND STRIKE PLAINTIFF'S
CLASS ALLEGATIONS
(No. 3:20-cv-05428-DGE) - 23

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL (206) 407-2200   FAX (206) 407-2278